VETERANS ADMINISTRATION MEDI-
CAL CENTER, TAMPA, FLORIDA,
Petitioner, Cross-Respondent,

v.

FEDERAL LABOR RELATIONS
AUTHORITY, Respondent,
Cross-Petitioner.

No. 80–5938.

United States Court of Appeals,
Eleventh Circuit.

May 3, 1982.

William Kanter, C. Frederick Geilfuss, Civ. Div., Dept. of Justice, Washington, D. C., for petitioner cross-respondent.

William E. Persina, Mary-Elizabeth Medaglia, Robert J. Freehling, Federal Labor Relations Authority, Washington, D. C., for respondent cross-petitioner.

Charles A. Hobbie, James R. Rosa, William J. Stone, AF of GE, AFL–CIO, Washington, D. C., for the American Federation of Government Employees, AFL–CIO (AFGE).

---

\* Honorable Homer Thornberry, U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. The agency is the Veterans Administration Medical Center, Tampa, Florida.

2. The union is the American Federation of Government Employees, AFL–CIO, Local 547.

Before THORNBERRY\*, FAY and HATCHETT, Circuit Judges.

THORNBERRY, Circuit Judge:

In this collective bargaining dispute, we are asked to decide whether a rational basis supports the Federal Labor Relations Authority's determination that a federal agency[1] has a duty to bargain over a union[2] proposal concerning the procedures to be followed in personnel actions, when those procedures would not prevent the agency from "acting at all" on such personnel actions. The agency argues that it should not have a duty to bargain when the proposed procedures would "unreasonably delay" its ability to make personnel decisions. Although the choice between these two standards is difficult, we find persuasive the reasoning of our sister Circuit in *Department of Defense (Dix-McGuire Exchange) v. FLRA*, 659 F.2d 1140 (D.C.Cir.1981), and we therefore follow their lead and enforce the FLRA's order below.

### I. Background

Title VII of the Civil Service Reform Act of 1978[3] gives federal employees the right "to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees." 5 U.S.C. § 7102 (1980). This right, however, is subject to § 7106(a) of the Act, which grants to an agency's management officials certain management rights—including the authority to make personnel decisions—that are not open to negotiation:

§ 7106. Management Rights

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect

3. Title VII of the Civil Service Reform Act of 1978, Pub.L.No.95–454, 92 Stat. 1111 (1978), embodies the Federal Service Labor-Management Relations chapter and is codified at 5 U.S.C. § 7101 *et seq.* (1980).

the authority of any management official of any agency—

.    .    .    .    .

(2) in accordance with applicable laws—

(A) to hire, assign, direct, lay off, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees . . . .

5 U.S.C. § 7106(a) (1980). But § 7106(b) clearly states that "[n]othing in this section shall preclude any agency and any labor organization from negotiating . . . *procedures* which management officials of the agency will observe in exercising any authority under this section." 5 U.S.C. § 7106(b)(2) (1980) (emphasis added). Thus, Title VII and § 7106 establish a balance between the nonnegotiable substantive rights of management and the negotiable procedures to be followed when management exercises its substantive rights.

The FLRA found that the union proposal in this case [4] was procedural and thus was negotiable despite the fact that the proposed procedures might cause substantial delay in management's ability to make its personnel decisions final. According to the FLRA, only those procedures that might prevent management from acting at all would be nonnegotiable. From this determination the agency now appeals.

## II. Standard of Review

▮ Initially, we note that this Court will normally defer to an agency's determination "when the administrative practice at stake 'involves a contemporaneous construction of a statute by the [persons] charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are as yet untried and new.'" *Power Reactor Development Co. v. International Union of Electrical, Radio & Machine Workers,*

*AFL–CIO,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961), *quoting Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed.2d 796 (1933). Here, Title VII of the Reform Act dictates that "[t]he [Federal Labor Relations] Authority shall provide leadership in establishing policies and guidance relating to matters under this chapter, and, except as otherwise provided, shall be responsible for carrying out the purpose of this chapter." 5 U.S.C. § 7105(a)(1) (1980). Thus, we will adhere to the "principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." *National Federation of Federal Employees, Local 1451, v. FLRA,* 652 F.2d 191, 193 (D.C.Cir.1981).

## III. "Acting At All" Or "Unreasonably Delay"?

The issue here hinges upon whether the FLRA's "acting at all" standard draws a reasonable balance between § 7106(a) substantive management rights and § 7106(b) union rights to negotiate procedures. Of course, the boundary between matters of substance and matters of procedure is hazy at best, as the ill-fated development of the substance-procedure dichotomy under *Erie R. Co. v. Tompkins* well illustrates. *See Department of Defense (Dix-McGuire Exchange), supra,* 659 F.2d at 1151 n.64. The FLRA has attempted to clarify this boundary by requiring the agency's management officials to negotiate on any proposed procedures except those that would prevent the agency from acting at all under its substantive management authorities. The agency, on the other hand, argues that such a standard allows procedure to overwhelm substance and, therefore, that management officials should only have to negotiate over those proposed procedures that do not unreasonably delay management's exercise of its authorities. But because we think that

---

**4.** The union proposal here read as follows:
*Section 11—Stays of Personnel Action*
A pending or proposed personnel action which has been made the subject of a grievance or arbitration will be stayed pending the final decision of the matter.

The union proposal in *Department of Defense (Dix-McGuire Exchange)* was effectively identical. *See* 659 F.2d at 1147.

the "acting at all" standard is not unreasonable in light of the statutory language and legislative history, we agree with the FLRA's determination.

The statute itself clearly contemplates that the management's substantive rights will be subject to the negotiation of procedures under § 7106(b), and it does not specify any limit on procedures that may indirectly undermine the substantive rights. Thus, the "acting at all" standard seems a natural reading of the statutory language.

The legislative history is not entirely clear, but it also indicates the reasonableness of the "acting at all" standard—and it certainly does not compel a contrary conclusion. Indeed, in the Conference Committee report on Title VII of the Reform Act, the conferees rejected a Senate provision that apparently would have set a limit for proposals which might unreasonably delay the exercise of management rights. The language used by the conferees is relied upon by all parties in this case, so it deserves quotation in full:

> Senate § 7218(b) provides that negotiations on procedures governing the exercise of authority reserved to management shall not unreasonably delay the exercise by management of its authority to act on such matters. *Any negotiations on procedures governing matters otherwise reserved to agency discretion by subsection (a) may not have the effect of actually negating the authority as reserved to the agency by subsection (a).* There are no comparable House provisions. The conference report deletes these provisions. However, the conferees wish to emphasize that *negotiations on such procedures should not be conducted in a way that prevents the agency from acting at all*, or in a way that prevents the exclusive representative from negotiating fully on procedures. Similarly, the parties may [not] indirectly do what the section prohibits them from doing directly.

Joint Explanatory Statement of the Committee on Conference, H.R.Rep.No.95–1717, 95th Cong., 2d Sess. 158 (1978) (emphasis added), U.S.Code Cong. & Admin.News 1978, p. 2723, 2892. As the agency points out, this language is not necessarily applicable to the case at hand, because it refers only to *negotiations* that would unreasonably delay management action (or prevent it from acting at all), not to the content of the proposed procedures. Thus, according to the agency, the rejected provision—and the conferees' alternative command—applied only to negotiations over procedure, not to the procedures themselves. But the FLRA argues that the conferees intended their language to apply as a test of the negotiability of the proposed procedures as well.

We think that an analysis restricted to this language alone is insufficient to support the FLRA's view. However, we agree with the Court in *Department of Defense (Dix-McGuire Exchange)* that an analysis of the case law under the FLRA's predecessor, the Federal Labor Relations Council, and of Congress' response to that case law does provide the necessary support.

Acting under § 12(b) of Executive Order 11,491,[5] the Federal Labor Relations Council had consistently held that an agency must bargain over union proposals unless they contained procedures that would unreasonably delay management's exercise of its § 12(b) rights. The FLRC announced this policy in *Local 63, American Federation of Government Employees, AFL–CIO, and Blaine Air Force Station, Blaine, Washington (Blaine)*, 3 FLRC 75 (1975), and followed it faithfully in a series of cases

---

**5.** Section 12(b) provided in pertinent part:

Sec. 12. *Basic provisions of agreements.* Each agreement between an agency and a labor organization is subject to the following requirements—

    .    .    .    .

(b) management officials of the agency retain the right, in accordance with applicable laws and regulations—

    .    .    .    .

(2) to hire, promote, transfer, assign, and retain employees in positions within the agency, and to suspend, demote, discharge, or take other disciplinary actions against employees. . . .

Exec. Order No. 11,491, 3 C.F.R. 869–70 (1966–70 Compilation), *reprinted in* 5 U.S.C. § 7101 app., at 293, 297 (1980). Unlike § 7106 of the Reform Act, § 12(b) did not expressly make these management rights subject to negotiation over procedures.

known to the Congress that drafted the Reform Act.[6] In fact, the Carter Administration sought to incorporate this case law in its proposed civil service reform legislation.[7] The Senate Committee on Governmental Affairs and later the Senate as a whole adopted the Administration language in § 7218 of S. 2640; the Committee on Governmental Affairs explained the language as follows:

> [I]t is specified in subsection [7218(b)] that nothing in that subsection shall preclude parties from negotiating procedures which management will observe in exercising its authority to decide or act or from negotiating arrangements for employees adversely affected provided that such negotiations do not result in certain consequences and are consonant with law and regulations.... These principles with respect to the obligation to negotiate "procedures" and "impact," while not expressly stated in Executive Order 11491, are established in case law thereunder.

S.Rep.No.95–969, 95th Cong., 2d Sess. 109 (1978), U.S.Code Cong. & Admin.News 1978, p. 2831. Thus, the Senate intended the case law including the *Blaine* "unreasonably delay" standard to be a part of its legislation.

The House of Representatives, however, began its markup of H.R. 11280 by using language different from the Administration's proposal. *See* H.R.Rep.No.95–1403, 95th Cong., 2d Sess. 400 (1978) (supplemental views); 124 Cong.Rec. H8467 (daily ed. Aug. 11, 1978). The House Post Office and Civil Service Committee rejected an Administration draft offered as an amendment to the House markup version, *see* 124 Cong. Rec. E4497 (daily ed. Aug. 10, 1978), and the full House rejected an amendment identical to the Senate language on management rights, *see* 124 Cong.Rec. H9653 (daily ed.

Sept. 13, 1978). The House eventually adopted an amendment offered by Representative Udall using the same language that now appears in § 7106 of the Reform Act. Representative Udall explained the balance between nonnegotiable substantive rights and negotiable procedures by noting that:

> This substitute strengthens the "Management rights" section reported by the Committee, but it is *still to be treated narrowly as an exception to the general obligation to bargain over conditions of employment.*
>
> ... [M]anagement has reserved the right to make the final decision to "remove" an employee, but that decision must be made *in accordance with applicable laws and procedures, and the provisions of any applicable collective bargaining agreement.* The reserved management right to "remove" would in no way affect the employee's right to appeal the decision through statutory procedures or, if applicable, through the procedures set forth in a collective bargaining agreement.

124 Cong.Rec. H9634 (daily ed. Sept. 13, 1978) (emphasis added). Representative Udall did not mention the "unreasonably delay" standard, and he even opposed several unsuccessful amendments that would have retained this standard. *See* 124 Cong. Rec. H9458 (daily ed. Sept. 11, 1978) (remarks of Rep. Udall) (opposing Erlenborn amendment); 124 Cong.Rec. H9633 (daily ed. Sept. 13, 1978) (remarks of Rep. Udall) (offering Udall amendment as substitute for Collins amendment).

The House-Senate Conference Committee adopted the House version of § 7106 —i.e., the Udall version—without revision. The Committee's only comment came in the language that the parties in this case now

---

6.  *See, e.g., National Treasury Employees Union and Bureau of Alcohol, Tobacco & Firearms, Dep't of the Treasury,* 6 FLRC 176 (1978); *National Treasury Employees Union, Chapter 101, and U. S. Customs Service, Office of Regulations & Rulings,* 6 FLRC 986 (1978); *American Federation of Government Employees, Local 3632, and Corpus Christi Army Depot,* 6 FLRC 1071 (1978).

7.  *See* Letter from Alan K. Campbell, Chairman, Civil Service Commission, and James T. McIntyre, Jr., Director, Office of Management and Budget, to Senator Ribicoff, transmitting Administration Amendment No. 2084 to S. 2640, 124 Cong.Rec. S7469 (daily ed. May 15, 1978) (placing into law the "provisions, policies and approaches of Executive Order 11491").

contend is central. *See* Joint Explanatory Statement of the Committee on Conference, H.R.Rep.No.95–1717, 95th Cong., 2d Sess. 158 (1978). As noted above, this language seems to refer only to the Committee's rejection of *negotiations* that would unreasonably delay the exercise of management rights. But when read in light of the legislative history outlined above, the language clearly refers to the Senate's proposal to forbid negotiation on *procedures* that would cause unreasonable delay. The House refused to adopt the Senate standard for these procedures, and the Senate agreed to the House's refusal—this is what the Conference Committee language sought to explain. Thus, we cannot say that the FLRA erred in adopting an "acting at all" standard, rather than an "unreasonably delay" one, for determining the negotiability of procedures under § 7106.

■ The agency musters other arguments against the "acting at all" standard, but we find them to be meritless. First, the agency notes that the Reform Act "should be interpreted in a manner consistent with the requirement of an effective and efficient government." 5 U.S.C. § 7101(b) (1980). This mandate, the agency argues, coupled with other congressional expressions of dissatisfaction over too lengthy personnel grievances,[8] should counsel against the union's proposed procedures which cause unreasonable delay. But the argument misses the mark by challenging the union's proposed procedure, and not its negotiability alone: we express no opinion as to the merits of the procedure; we hold only that the agency must sit down at the bargaining table with the union to discuss the procedure. A finding of negotiability

simply is not a requirement that the agency accept procedures capable of causing unreasonable delay.[9]

■ Second, the agency contends that the procedure cannot be negotiable because it would prevent the agency from acting in emergencies or in accordance with law. *See* 5 U.S.C. §§ 7106(a)(2)(D), 7117(a)(1) (1980). However, the FLRA specifically interpreted the union proposal "as permitting management to implement a personnel action when required to do so by applicable law or regulation and as permitting management to fulfill any lawful responsibilities, duties, or obligations that may have arisen or accrued as the result of a personnel action that has been made the subject of a grievance or arbitration." We agree with this interpretation.

■ Third, the agency finds an unexplained contradiction between the FLRA's "acting at all" standard used here and its "directly interfere" test used in *American Federation of Government Employees, AFL–CIO, and Wright-Patterson Air Force Base, Ohio*, 2 FLRA No. 10 (1980), and *American Federation of Government Employees, AFL–CIO, Local 695, and Department of Treasury, U. S. Mint, Denver, Colorado*, 3 FLRA No. 7 (1980). But we concur with the Court in *Department of Defense (Dix-McGuire Exchange)* that the FLRA may distinguish between procedures that directly interfere with management rights —i.e., those procedures that specify the criteria pursuant to which management must exercise its rights—and procedures that indirectly affect management by outlining the *process* that management must follow when it exercises its rights pursuant to its

8. *See*, e.g., 124 Cong.Rec. H9372 (daily ed. Sept. 11, 1978) (remarks of Rep. Udall) ("[O]ne of the fundamental purposes of this bill is to make it easier and not harder to discharge incompetent employees. . . ."); 124 Cong.Rec. S17083 (daily ed. Oct. 4, 1978) (remarks of Sen. Percy) ("At the core of the legislation, the conference agreed to provisions expediting and easing the process for disciplining and removing unfit Federal employees.").

9. Of course, a finding of negotiability is a finding that the proposal is legally sound and therefore, in the event of an impasse, that it can be

imposed by the Federal Services Impasses Panel. But the proposal is indeed legally sound under the "acting at all" standard (which, as we have shown above, is also legally sound). Moreover, the Impasses Panel apparently imposes only those proposals that are reasonable, not those that actually would cause unreasonable delay. *See* In the Matter of SBA and AFGE, No. 80 FSIP 30 (Oct. 6, 1980). And we are not presented with the question whether the Impasses Panel has the independent authority to determine the legal soundness of a union proposal.

own criteria. *See* 659 F.2d at 1153. We think that in the latter class of cases the FLRA may apply the "acting at all" standard, without necessarily having to apply it in the former class. In any event, the decision not to use this standard in the "direct interference" cases cannot invalidate its proper use in the case at hand, an "indirect effect" case.

■ Finally, the agency appears to argue that the FLRA decision was arbitrary and capricious for failing to consider what the agency thinks are the controlling factors and arguments. It is true that the FLRA opinion below did not explicate the entire supporting argument, as this Court has done. But it did state that it was applying the "acting at all" standard as developed in its *Dix-McGuire Exchange* opinion at 2 FLRA No. 16 (1979), which undertook the full analysis. This was sufficient to enable the parties and this Court to understand the decision requiring negotiation over the contested proposal. In short, the FLRA provided an adequate explanation of the basis for the actions which they took, and the "arbitrary and capricious" test does not require more. *See Pitre Bros. Transfer, Inc. v. United States*, 580 F.2d 140, 144 (5th Cir. 1978).

For all of the reasons discussed above, we therefore enforce the FLRA's negotiability order.

ENFORCED.

FAY, Circuit Judge, dissenting:

With great respect for the majority's position and holding, I dissent. The case before us deals with a union proposal which would stay any pending or proposed personnel action made the subject of a grievance or arbitration until a final determination had been made. The FLRA found this proposal negotiable.

As Judge Thornberry points out, the choice of standards to be used is difficult. Although I cannot quarrel with the majority's legal analysis nor with its selection of the "acting at all" standard, it seems to me that such is unnecessary here. In my opinion this proposal is not negotiable under either standard.

Section 7106 preserves specific management rights. Congress has found such to be necessary in order that the agency function efficiently. To suggest that appropriate officials could operate at all if any decision to hire, assign, direct, lay off, retain, suspend, remove, reduce in grade or pay, transfer, etc. could be automatically stayed by merely making it the subject of a grievance or arbitration is too much for me. Nor do I find solace in the argument of counsel that this proposal would never become the final product of negotiations and certainly would not be imposed by the Federal Services Impasses Panel. Today's impossibilities seem to be tomorrow's realities.

The argument has also been made that these grievance and arbitration procedures are designed to move rapidly and that such stays would be for reasonably short periods of time. I think we could take judicial notice that such is not so.

Concluding that this proposal is so clearly contrary to the express provisions of the statute as to be outside any area of negotiability under either standard, I would deny enforcement.