### NATIONAL FEDERATION OF FEDERAL EMPLOYEES, LOCAL 615, Petitioner,

v.

### FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

### No. 85–1299.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 19, 1986.

Decided Sept. 12, 1986.

Edwin H. Harvey, Philadelphia, Pa., with whom H. Stephen Gordon, Washington, D.C., was on brief, for petitioner.

Jill A. Griffin, Atty., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., and Steven H. Svartz, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., were on brief, for respondent.

Before WALD, Chief Judge, and SCALIA and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

Circuit Judge STARR concurs in the judgment and in all but part III of the opinion.

SCALIA, Circuit Judge:

Petitioner National Federation of Federal Employees seeks review of a decision of the Federal Labor Relations Authority finding nonnegotiable, as an infringement of the management right to "take ... disciplinary action," 5 U.S.C. § 7106(a)(2)(A) (1982), a union proposal requiring management to institute disciplinary investigations, if at all, within sixty days of knowledge of the infraction. We are asked to consider whether this proposal was properly found nonbargainable under the Authority's "acting at all" doctrine, under which a proposal framed as a negotiable procedure may nonetheless be found nonnegotiable if its implementation would prevent the agency from "acting at all" to exercise a reserved management right.

I

Under the Federal Service Labor-Management Relations Act, Title VII of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111, 1191 (codified at 5 U.S.C. §§ 7101–7135 (1982)), management officials of federal agencies are required to bargain with employees, 5 U.S.C. § 7114(a)(4), over conditions of employment, see 5 U.S.C. § 7103(a)(12), (14). Exempted from this requirement are certain enumerated substantive management rights which cannot themselves be lawful subjects of negotiation, 5 U.S.C. § 7106(a); however, the procedures by which these rights may be exercised are expressly declared negotiable, 5 U.S.C. § 7106(b)(2). In this case, in the course of collective bargaining negotiations, the National Federation of Federal Employees, Local 615, and the management of the Sequoia and Kings Canyon National Parks concluded an agreement that contained the following provision:

Investigation of the incident for which a disciplinary action may be taken, if at all, will normally be initiated within sixty (60) days after the incident in question, or within sixty (60) days after the Employer became aware of the incident.

As required by 5 U.S.C. § 7114(c), the parties submitted the agreement to the Department of the Interior for review. The Department disapproved the provision in question as nonnegotiable, finding that it "violates management's right to ... take

disciplinary action" reserved to it under 5 U.S.C. § 7106(a)(2)(A). The Union appealed this determination to the Federal Labor Relations Authority ("FLRA"), which has authority under 5 U.S.C. § 7117(c)(1) to make negotiability determinations. The FLRA upheld the Department's position, rejecting the Union's argument that the proposal simply represented a procedure which management would observe in exercising its rights under the statute, and was therefore negotiable. It found that the proposal would "in certain circumstances, prevent the Agency from acting at all with respect to its right to take disciplinary action against employees pursuant to section 7106(a)(2)(A) of the Statute." *National Federation of Federal Employees, Local 615 and National Park Service, Sequoia and Kings Canyon National Parks, U.S. Department of Interior,* 17 F.L.R.A. 318, 321 (1985). The FLRA reasoned that, while agency investigation of incidents is not itself an explicit legal or regulatory requirement for the imposition of discipline,

> the standard of proof management must meet, *i.e.,* a "preponderance of the evidence," to prevail upon appellate review of an adverse action, makes a thorough investigation the necessary precursor to disciplinary action in most instances.

*Id.* at 321 (footnote omitted). The Union appeals this decision under 5 U.S.C. § 7123, which provides for judicial review of final decisions of the FLRA.

## II

The core of the present dispute is the meaning and application of 5 U.S.C. § 7106(b)(2), which adds to the specification of nonnegotiable management rights in § 7106(a) the qualification that "[n]othing in this section shall preclude any agency and any labor organization from negotiating ... procedures which management officials of the agency will observe in exercising any authority under this section." In order to ensure that this procedural qualification does not swallow the substantive rule, the Authority has held that even where a proposal is framed in clearly procedural terms, it may nonetheless be found nonbargainable if its adoption would prevent an agency from "acting at all" with regard to a reserved management right. *American Federation of Government Employees, AFL–CIO, Local 1999 and Army-Air Force Exchange Service, Dix-McGuire Exchange, Fort Dix, New Jersey,* 2 F.L.R.A. 153, 155 (1979). This circuit upheld that formulation in *Department of Defense v. FLRA,* 659 F.2d 1140 (D.C.Cir. 1981), *cert. denied,* 455 U.S. 945 (1982), opining that the "acting at all" standard was "a reasonable and natural construction of the statutory language, rendered by the agency given responsibility for administering the statute." 659 F.2d at 1153 (footnote omitted). That holding has since been followed by several other circuits. *See Department of the Air Force v. FLRA,* 717 F.2d 1314, 1315–16 (10th Cir.1983); *Veterans Administration Medical Center v. FLRA,* 675 F.2d 260, 261 (11th Cir.1982). It follows from the above case law that, if there is a reasonable basis for the FLRA's conclusion that the proposal before us would in certain circumstances establish an absolute bar to the exercise of the protected management right to discipline employees, we must affirm its finding of non-negotiability. *See Department of Defense v. FLRA,* 685 F.2d 641, 647–48 (D.C.Cir.1982).

The Union argues that even as to the agency's ability to investigate—much less as to its ability to discipline—the proposal does not establish an absolute cutoff. It asserts that the statement that investigations will "normally" begin within sixty days constitutes "no absolute requirement that the investigation begin prior to the expiration of that time," but merely expresses what "would typically occur," Brief for Petitioner at 9, establishing no more than a "target date," *id.* at 16, and leaving it to management "ultimately [to] decide whether more time was needed." Reply Brief for Petitioner at 4. Petitioner's very expression of this argument betrays its weakness. After adoption of the proposal, management will not be able to commence an investigation beyond the sixty-day cutoff unless it affirmatively decides (presumably with some basis in reason, *see* 5 U.S.C. § 706(2)(A)) that "more time [is] *needed*"

(emphasis added); if sixty days expire and there is no *reason* for delay, investigation is precluded. Stating what "normally" has been done by the agency in the past is purely descriptive; but stating (as this proposal does) what the agency "normally" will do in the future sets forth a norm, and the agency will have to justify its departure from that norm. While it is entirely true that the agency is not prevented from "investigating at all" before the sixty days have expired; or even *after* the sixty days have expired where there is some reason for the delay; it *is* prevented from "investigating at all" after sixty days where it had no particular reason (as it currently need not have) for waiting that long.

To establish that the proposal prevents the agency from "investigating at all" (in at least some cases) is not quite to conclude our inquiry. The enumerated management rights protected by the Act include the rights to "suspend, remove, reduce in grade or pay, or take other disciplinary action," 5 U.S.C. § 7106(a)(2)(A), but not the right to investigate. And as the Union correctly asserts, the proposal concerns only the initiation of investigative actions and "does not purport to address discipline," Brief for Petitioner at 9. Whether or not an investigation is initiated within sixty days, the agency remains free to institute disciplinary action.

As the FLRA has "consistently held," however, the enumerated management rights "include more than merely the right to decide to take the final actions specified." *National Federation of Federal Employees, Local 108 and U.S. Department of Agriculture, Farmers Home Administration,* 16 F.L.R.A. 807, 808 (1984) (*"NFFE and USDA"*); *American Federation of Government Employees, AFL–CIO, Mint Council 157 and Department of the Treasury, Bureau of the Mint,* 19 F.L.R.A. 640, 643 (1985) (*"AFGE and Department of the Treasury"*). We agree with the Authority that the right to discipline includes the right to investigate whether disciplinary action is justified. Or, to put the same point differently, the elimination of investigative power would have the *"effect* of eliminating management au-

thority" to discipline, which practical impact we have viewed as sufficient to invoke the "acting at all" doctrine. *Department of Defense v. FLRA,* 659 F.2d at 1153 (emphasis added).

The Union asserts that since the agency can take disciplinary action without investigation, the inability to investigate goes not to whether the agency can act but only to whether its action will be upheld (as sustained by a "preponderance of the evidence," 5 U.S.C. § 7701(c)(1)(B)) on appeal. Reply Brief for Petitioner at 5. There are two answers to this: First, in many cases investigation may be needed not merely to accumulate the evidence required to support disciplinary action, but to know whether any discipline-worthy offense has been committed, and by whom. Second, and more fundamentally, disciplinary action that is unsupported by a preponderance of the evidence before the agency is reversed on appeal not because of some special evidentiary requirement applicable to appeals, but because disciplinary action that is not so supported *is unlawful, whether or not it is appealed.* Thus, to prevent the agency from obtaining evidence justifying dismissal is to prevent it from dismissing.

In sum, just as the right to lay off employees under 5 U.S.C. § 7106(a)(2)(A) "also encompasses the right to take certain actions integral to the exercise of management's rights, such as to discuss and deliberate concerning the relevant factors upon which such a determination will be made," *NFFE and USDA,* 16 F.L.R.A. at 808; *AFGE and Department of the Treasury,* 19 F.L.R.A. at 643, the right to discipline encompasses the right to take the investigatory steps "integral" to that disciplinary action. And since the proposed time limit is one which could preclude the agency from determining whether discipline is warranted and from effectuating it where it is warranted, the FLRA reasonably determined that this proposal violated the "acting at all" doctrine and was therefore nonnegotiable.

### III

Having decided this case pursuant to the law of this circuit binding upon the panel,

we cannot avoid noting our deep suspicion that the FLRA, applying the same "acting at all" standard, could as readily have come out the opposite way and as readily have been affirmed. Experience under the "acting at all" standard since we approved its formulation causes this panel to doubt whether it is either theoretically sound or practically susceptible of principled application.

Its theoretical fragility is demonstrated by its principal corollary, which we have applied in the present case: A proposal is negotiable if it determines *when* management rights may be exercised, but nonnegotiable if it determines *whether* they may be exercised. *See National Treasury Employees Union v. FLRA*, 712 F.2d 669, 672–73 (D.C.Cir.1983) ("*NTEU v. FLRA*"). This distinction may seem, in most cases, to serve the evident statutory goal of leaving management in substantial control of those matters denominated "management rights." It separates, for example, a proposal creating a "statute of limitations" that would completely bar subsequent disciplinary action—*e.g.*, a requirement that the agency notify an employee within 24 hours of an infraction in order to base disciplinary action on that incident, *American Federation of Government Employees, AFL–CIO, Local 1770 and Department of the Army, Headquarters, XVIII Airborne Corps and Fort Bragg, North Carolina*, 17 F.L.R.A. 752, 754–55 (1985)— from a proposal simply requiring exhaustion of certain procedures prior to disciplinary action—*e.g.*, a requirement that disciplinary action be stayed pending the outcome of an administrative appeal through grievance procedures. *NTEU v. FLRA*, 712 F.2d at 672; *see also Department of Defense v. FLRA*, 659 F.2d at 1147; *Department of the Air Force v. FLRA*, 717 F.2d at 1315; *Veterans Administration Medical Center v. FLRA*, 675 F.2d at 262 n. 4. But the results of the test are not always sensible. For example, a requirement that disciplinary actions be initiated within ten years of the infraction would be nonnegotiable (though in practical terms a negligible restriction upon management prerogatives), while a requirement that disciplinary action be stayed for as long as the union wishes to investigate the matter, up to ten years, would be negotiable (though a massive practical impairment of management rights). *See Department of the Air Force v. FLRA*, 717 F.2d at 1316 (proposal negotiable "[e]ven though ..., if adopted, [it] could result in unreasonable delay in disciplinary action"); *see also U.S. Department of Treasury, Internal Revenue Service Philadelphia Service Center and National Treasury Employees Union, Chapter 71*, 16 F.L.R.A. 749, 750–51 & n. 4 (1984) (finding that a delay of 580 days would not itself render a proposal nonnegotiable since "delay does not prevent management from ultimately taking removal actions against employees"). *Cf. Veterans Administration Medical Center v. FLRA*, 675 F.2d at 266 (Fay, J., dissenting) ("To suggest that appropriate officials could operate at all if any decision to hire, assign, direct, lay off, retain, suspend, remove, reduce in grade or pay, transfer, etc. could be automatically stayed by merely making it the subject of a grievance or arbitration is too much for me.").

Moreover, while it would appear that the theoretical failings of the "acting at all" standard have been overcome in practice, this is only by virtue of the fact that the standard lends itself to completely unprincipled and inconsistent application. Consider, for example, the FLRA's treatment of proposals requiring that certain types of work be scheduled in advance. The Authority has found that a proposed requirement of ten workdays' notice of any change in duties or work assignments, though it unquestionably delays management's exercise of its right to assign work, does not prevent management from "acting at all" and is thus bargainable. *American Federation of Government Employees, AFL–CIO, Local 32 and Office of Personnel Management*, 15 F.L.R.A. 825, 827 (1984). *See also American Federation of Government Employees, AFL–CIO, Local 2272 and Department of Justice, U.S. Marshals Service, District of Columbia*, 9 F.L.R.A. 1004, 1019–20 (1982) (proposal for

48 hours prior notice for certain work assignments held a negotiable procedure). In another case, however, the FLRA has found that a proposal requiring thirty days' advance scheduling for firefighting training drills is nonbargainable, because it "would prevent management from acting at all to assign certain types of training ... without the requisite notice." *American Federation of Government Employees, AFL–CIO, Local 1749 and Department of the Air Force, 47th Flying Training Wing, Laughlin Air Force Base, Texas,* 12 F.L.R.A. 149, 150 (1983) (emphasis deleted). It should be evident, by contrasting these two holdings, that a delay provision (or a cutoff provision, such as that in the present case) can readily be characterized as preventing the agency from "acting at all" or as not preventing the agency from "acting at all," *depending upon what one chooses to define as the agency action.* It is the latter if the agency action is the assignment of drills; the former if the agency action is the assignment of drills *without prior notice.*

To take another interesting pair of cases: The FLRA has held to be nonnegotiable a proposal preventing the agency from taking disciplinary action against an employee so long as that employee is enrolled in a drug or alcoholism program and making "progress toward the renewal of acceptable work performance." The employee could, the FLRA said, "completely avoid disciplinary action ... by remaining a participant in the program and making progress, however slight, towards acceptable performance." *American Federation of Government Employees, Local 1812, AFL–CIO and United States Information Agency,* 16 F.L.R.A. 308, 310–11 (1984); *see also National Treasury Employees Union and Internal Revenue Service,* 6 F.L.R.A. 522, 523–24 (1981) (finding nonnegotiable a proposal barring disciplinary action so long as employee is an "active participant" in a drug or alcoholism program). At the same time, the FLRA has found that a proposal to give employees who accept assistance in an alcoholism and drug abuse program a "reasonable opportunity to improve their performance before being subject to adverse action" *is* negotiable, on the ground that this proposal would simply "delay the imposition of discipline for those employees whose performance does not improve after having accepted assistance under the program." *American Federation of State, County, and Municipal Employees, AFL–CIO, Local 2910 and Library of Congress,* 11 F.L.R.A. 632, 635 (1983). It is obvious that the FLRA could have characterized the proposal in the last case as one completely preventing disciplinary action against employees who "improve their performance"—just as it characterized the proposal in the first case as one preventing disciplinary action against employees making "reasonable" progress toward "acceptable" performance. Or, alternatively, it could have characterized the proposal in the first case as one merely delaying disciplinary action against employees who fail to make progress toward "acceptable performance"—just as it characterized the proposal in the last case as one delaying disciplinary action against employees whose performance does not improve. Whether the agency is prevented from "acting at all" thus turns upon whether one chooses to define the action in question as "dismissal of an employee who has failed to bring his performance up to standards" or rather simply "dismissal of an employee."

An implicit definitional choice was similarly made in the present case. The proposal before us prevented the agency from "acting at all" only because the Authority chose, in effect, to describe the action in question as "disciplinary action after investigation." It could as well have described it as "disciplinary action after prompt investigation."

It may well be that the management right to assign work must be deemed to include, in some circumstances and not in others, the right to make unannounced assignments; that the management right to dismiss employees must be deemed to include the ability to dismiss without giving excessive opportunity for reformation, but not without giving no opportunity for reformation at all; and that the management right to discipline employees must be

deemed to include the right to discipline on the basis of a needlessly delayed investigation. But it seems to us to make no sense to conclude those difficult inquiries by merely defining the agency "action" in terms of the very question at issue, making the proposals at issue negotiable or nonnegotiable at the FLRA's definitional whim.

This panel is bound by this court's initial approval of the "acting at all" test, and by subsequent reaffirmation of the test's validity. We doubt, however, whether the court will be able to live indefinitely with a test that conceals rather than explains the FLRA's policy judgments which ultimately determine whether substantive management rights have realistically been impaired.

The petition for review is

*Denied.*

STARR, Circuit Judge:

I concur in the judgment and in all but part III of the opinion.