## UNITED STATES DEPARTMENT OF the AIR FORCE, Air Force Logistics Command, Wright–Patterson Air Force Base, Ohio, Petitioner,

v.

## FEDERAL LABOR RELATIONS AUTHORITY, Respondent,

American Federation of Government Employees, AFL–CIO, Intervenor.

No. 91–1031.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 16, 1991.

Decided Dec. 3, 1991.

---

Frank A. Rosenfeld, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and William Kanter, Atty., Dept. of Justice, were on the brief, for petitioner.

Frederick M. Herrera, Atty., Federal Labor Relations Authority, with whom William E. Persina, Sol., William R. Tobey, Deputy Sol. and Arthur A. Horowitz, Associate Sol., Washington, D.C., were on the brief, for respondent.

Mark D. Roth, Charles A. Hobbie, Joe Goldberg and Alexia McCaskill, Washington, D.C., were on the brief, for intervenor.

Before RUTH BADER GINSBURG and HENDERSON, Circuit Judges, and VAN GRAAFEILAND,* Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

The Air Force Logistics Command ("AFLC" or "Command") petitions for review of a Federal Labor Relations Authority ("FLRA" or "Authority") negotiability order, and the FLRA cross-petitions for enforcement. The order in question held negotiable under the Federal Service Labor–Management Relations Statute ("FSLMRS" or "Statute"), 5 U.S.C. §§ 7101 *et seq.*, several proposals made by the union representing civilian AFLC employees, the American Federation of Government Employees, Council 214 ("AFGE" or "Union"). These proposals concern the Command's use of "last chance" agreements, *i.e.*, contracts between employer-agency and employee to suspend disciplinary action pending a probationary period in which the employee is afforded a chance to improve his or her performance. AFGE's proposals, the Command maintains, compromise both AFLC's statutorily-recognized managerial prerogatives and employees' entitlement to choose their own advocates in disciplinary proceedings. We conclude that the challenged FLRA rulings are "reasonable and defensible"; accordingly, we deny

AFLC's petition and enforce the Authority's order.

## I. Background

### A. The Statutory Prescriptions in Point

The Federal Service Labor–Management Relations Statute requires federal agencies to negotiate in good faith with their employees' labor organizations over a wide range of "conditions of employment." *See* 5 U.S.C. §§ 7103(a)(14), 7114(a)(4).[1] The Statute excludes certain matters from this duty to bargain. *See* 5 U.S.C. § 7117(a). Salient among the non-negotiable matters are the "management rights" described in 5 U.S.C. § 7106(a). *See generally Department of Defense v. FLRA*, 659 F.2d 1140, 1143–47 (D.C.Cir.1981). Thus, an agency may reject as outside the duty to bargain a term proposed by a union if, in the agency's view, the proposal conflicts with management's authority to "hire, assign, direct, [or] layoff ... employees ... or to suspend, remove, reduce in grade or pay, or take other disciplinary action against ... employees." *See* 5 U.S.C. § 7106(a)(2)(A). The union, in turn, may challenge before the Authority the agency's assertion of a management right. *See* 5 U.S.C. § 7117(c).[2]

Although a certified union serves as an employee's "exclusive bargaining agent" in contract negotiations, *see* 5 U.S.C. §§ 7111, 7114(a), the Statute reserves to the employee the right to select his or her own representative—affiliated with the union or not—in disciplinary proceedings. *See* 5 U.S.C. § 7114(a)(5) (right to representative of "employee's own choosing in any grievance or appeal action"); 5 U.S.C. § 7121(b)(3)(B) (right to represent oneself in grievance proceedings).

---

* Of the United States Court of Appeals for the Second Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Although strikes by federal employees are illegal, the Statute provides for binding resolution of negotiation impasses under the auspices of the Federal Service Impasses Panel. *See* 5 U.S.C. § 7119(b).

2. While recognizing "management rights" as a non-negotiable category, § 7106 declares negotiable union proposals on (1) "procedures which management officials of the agency will observe in exercising" management rights and (2) "appropriate arrangements for employees adversely affected by the exercise" of management rights. *See* 5 U.S.C. § 7106(b)(2), (3).

## B. The Challenged Proposals

■ The central question before us is whether certain union proposals designed to limit the scope of "last chance" agreements encroach impermissibly on management's section 7106 disciplinary authority or employees' section 7114 right to designate an advocate in disciplinary proceedings. "Last chance" agreements are probationary contracts negotiated by an agency with an employee who faces removal or serious discipline for poor performance. In exchange for the employer's withholding the adverse action, the employee pledges rehabilitation or job performance improvement in specific ways. For example, a worker with a substance abuse problem and an unsatisfactory attendance record might agree to participate in a treatment program and to account adequately for absences from work. *See, e.g., Girani v. FAA,* 924 F.2d 237 (Fed.Cir.1991); *Fuller v. Frank,* 916 F.2d 558, 562 (9th Cir.1990).

If the employee fails to measure up as promised in a last chance agreement, the agency may proceed to administer the discipline earlier suspended. Agencies often condition last chance agreements upon the employee's waiver of rights to challenge the adverse action decision, as initially made or eventually executed. *Compare McCall v. United States Postal Serv.,* 839 F.2d 664 (Fed.Cir.1988) (upholding waiver of right to appeal to Merit Systems Protection Board) *with Callicotte v. Carlucci,* 698 F.Supp. 944, 946–47 (D.D.C.1988) (refusing, on public policy grounds, to enforce "last chance" waiver of right to appeal to Equal Employment Opportunity Commission). *See also Stewart v. United States Postal Serv.,* 926 F.2d 1146, 1148 (Fed.Cir. 1991) (before giving effect to waiver of appeal right, Merit Systems Protection Board must determine whether employee, in fact, failed to perform as pledged).

In 1988, AFGE, as the exclusive bargaining agent for approximately 73,000 of AFLC's civilian employees, presented the Command with nine proposals concerning the formation, terms, and administration of last chance contracts. We set out AFGE's proposals in full in the margin placing in boldface those held negotiable by the FLRA.[3] Prominent on the Union's list

---

**3.** These are the Union's nine proposals:

*Proposal 1*
**AFLC shall not offer or attempt to persuade bargaining unit employees to waive their rights in connection with disciplinary and/or adverse actions or to waive their rights to challenge such actions through appropriate procedures, such as; [sic] MSPB, EEO, Arbitration, etc.**

*Proposal 2*
**The terms of "Last Chance" or "Pre–Removal" agreements offered by AFLC Management to AFGE Council 214's bargaining unit members for signature shall contain as a minimum the following provisions:**

a. **Reinstatement/implementation of disciplinary or adverse action by AFLC management will automatically reinstate full employees' rights. (If necessary, AFLC management will reissue a notice of proposed action and letter of final decision in order to restore full employees' rights. However, this reissuance [sic] will not be inconsistent [with] or violative of Section 5.02 of the Master Labor Agreement.)**

b. **Implementation of "Last Chance" or "Pre–Removal" agreements shall be for just cause and will not be arbitrary capricious, an abuse of management discretion, based on disparate treatment, [nor] violat[ive of] fundamental fairness or public policy.**

c. Implementation of "Last Chance" or "Pre–Removal" agreements may be challenged through the negotiated grievance procedures.

d. Implementation of "Last Chance" or "Pre–Removal" agreements will be stayed pending *final decision,* if challenged through the negotiated grievance procedures.

e. Upon completion of the probationary period, the alleged disciplinary or adverse action which led to the "Last Chance" or "Pre–Removal" agreement will be cancelled and expunged from bargaining unit employees' personnel records.

f. **Signing "Last Chance" or "Pre–Removal" agreements does not constitute admission of any wrong doing [sic] by bargaining unit employees.**

g. **Duration of the probationary period contained in "Last Chance" or "Pre–Removal" agreement will not exceed one (1) year. However, a lesser amount may be negotiated.**

*Proposal 3*
**Prior to offering bargaining unit employees a "Last Chance" or "Pre–Removal" agreement, the Local President, or designee will be notified and given an opportunity to be present in accordance with the Labor Statute.**

*Proposal 4*
After such notification and meeting in accordance with item three (3) above, the Local President, or designee may bargain the terms or

were provisions (1) proscribing waiver of the right to appeal (Proposals 1, 2(a)), (2) declaring that an employee's signature on a last chance agreement does not constitute an admission of wrongdoing (2(f)), and (3) placing a one-year time limit on the agreement's probationary period (2(g)). Such limitations are necessary, the Union maintained, to protect employees from "inherently coercive" last chance offers.

The Command refused to bargain on any of the nine proposals. Last chance agreements, AFLC contended, are not "conditions of employment," and therefore fall outside the Command's statutory duty to bargain. The Union's proposals, AFLC further asserted, conflict with the rights of management, of individual employees or both. AFGE timely appealed to the FLRA. The Authority held some of the Union's proposals negotiable, and others, non-negotiable. *American Fed'n Gov't Employees, Council 214 & United States Dep't of Air Force, Air Force Logistics Command*, 38 FLRA 309 (1990).

FLRA rejected the Command's assertion that the terms of last chance agreements do not qualify as "conditions of employment" within the meaning of section 7103. That ruling is not challenged by AFLC in the instant petition for review. Central to the Command's petition, FLRA determined that Proposals 1, 2(a), 2(b), 2(c), 2(f), 2(g), and 7 do not interfere with management's

right to take disciplinary action against employees. These Union proposals might incline the Command against last chance agreements and hence decisions to *postpone* disciplinary action, the Authority recognized. Nevertheless, FLRA reasoned, the proposals would leave intact management's prerogative to *take* such action, including management's initial and ultimate freedom to determine *unilaterally* the kind, degree, and timing of discipline.[4]

On the other hand, the Authority declared AFGE Proposals 2(d) and 2(e) non-negotiable for these reasons: (1) expunging adverse action from an employee's record, per AFGE Proposal 2(e), would deprive the Command of evidence potentially relevant in future disciplinary actions; (2) the protracted stay required by Proposal 2(d) would conflict with management's right, under 5 U.S.C. § 7513(b)(1), to take prompt action against an employee reasonably believed to have committed a serious crime.

The Authority also distinguished between Proposals 3 and 4; FLRA ranked the former, but not the latter, within AFLC's duty to bargain collectively with AFGE. The Union's authority to negotiate the terms of employees' last chance agreements, per Proposal 4, could not be reconciled with the individual employee's statutory right to the representative of his or her choice, the Authority held. But AFGE's bare presence in negotiations—all

---

conditions of the "Last Chance" or "Pre-Removal" agreement on behalf of the bargaining unit employee or employees in question in that particular case.

*Proposal 5*

Local negotiations over "Last Chance" or "Pre-Removal" agreements shall be in accordance with the Mater Labor Agreement and [the] Labor Statute. That is; the Local President, or designee may utilized [sic] the services of the Federal Mediation and Conciliation Service and the Federal Service Impasses Panel in the event that an agreement cannot be reached with the local AFLC management due to an impasse.

*Proposal 6*

**Local "Last Chance" or "Pre–Removal" agreements shall not in any way modify or otherwise change this agreement.**

*Proposal 7*

**"Last Chance" or "Pre–Removal" agreements will not be valid unless (1) the employee is given the opportunity to discuss the matter with the Local President, or designee, [(2) the**

employee signs a statement agreeing not to hold AFGE responsible in any way and (3) signed in the presence of the Local President, or designee.]

*Proposal 8*

**No rights of Employees or Union are waived by this agreement.**

*Proposal 9*

**AFLC Council 214 may add, delete, modify or otherwise change the above proposals as deemed appropriate by virtue of knowledge gained through discussion(s)/negotiations or through Section 7114 of the Labor Statute on the subject matter.**

Parts (2) and (3) of Proposal 7 were withdrawn by the Union before the Authority and therefore are not part of this appeal.

4. Alternately, the Authority held that if Proposals 2(a), 2(b), 2(g), and 7 did concern matters of "management's right," those proposals would qualify as negotiable "procedures" under § 7106(b)(2).

that Proposal 3 facilitated—would scarcely impinge on the individual employee's choice of a representative, FLRA ruled. Finally, FLRA declared that, "for the reasons discussed in regard to Proposals 1, 2(a), 2(b), 2(f), 2(g), and 7," Proposals 6, 8, and 9 would not interfere with management rights or conflict with any other statutory provision; accordingly, those proposals too were declared negotiable.[5]

AFLC contends that none of the provisions found negotiable by the Authority are within the Command's duty to bargain collectively. AFGE has intervened in support of the Authority's cross-petition for enforcement; the Union does not further contest FLRA's rulings that Proposals 2(c), 2(d), 2(e), 4, and 5 are non-negotiable.

## II. Analysis

### A. Standard of Review

■ As an initial matter, the parties dispute the degree of respect this court of review should accord FLRA's negotiability determinations. The Authority familiarly asserts that "when it exercises its 'special function of applying the general provisions of the Statute to the complexities' of federal labor relations," its conclusions should be rejected only when unreasonable or indefensible. *Bureau of Alcohol, Tobacco, and Firearms v. FLRA,* 464 U.S. 89, 97, 98 n. 8, 104 S.Ct. 439, 444, 444–45 n. 8, 78 L.Ed.2d 195 (1983) (citations omitted). AFLC counters that because the challenged determinations required the Authority to make assessments about federal workplace discipline, a subject on which FLRA is not expert, court review should be *de novo.*

Deferential review is in order. Congress explicitly entrusted to FLRA responsibility to resolve "issues relating to the duty to bargain in good faith under § 7117(c)," 5 U.S.C. § 7105(a)(2)(E), and specified that the Authority's decisions should be reversed only when arbitrary or capricious. *See* 5 U.S.C. § 7123(c) (incorporating by reference standard of judicial review estab-

lished by the Administrative Procedure Act). In keeping with the Statute's text, and corresponding Supreme Court instructions, this court upholds the Authority's negotiability conclusions when they are "reasonable and defensible." *Department of Treasury, Bureau of Alcohol, Tobacco, and Firearms v. FLRA,* 857 F.2d 819, 821 (D.C.Cir.1988) (quoting *Bureau of Alcohol, Tobacco, and Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983)); *see also Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

■ AFLC calls our attention to cases in which the Authority's determinations were scrutinized *de novo. E.g., Professional Airways Sys. Specialists v. FLRA,* 809 F.2d 855 (D.C.Cir.1987); *United States Dep't of Justice, Immigration and Naturalization Serv. v. FLRA,* 709 F.2d 724 (D.C.Cir.1983). Those decisions are inapposite. The Authority's conclusions in *Professional Airways Systems,* for instance, depended on FLRA's interpretation of the Back Pay Act, a statute outside its field of expertise. *See id.* at 857 n. 6; *see also INS* at 730 ("In short, FLRA usurps the authority Congress conferred on OPM when it orders INS to bargain over a subject inconsistent with OPM regulations."). Here, the Authority was not called upon to interpret a statute other than the FSLMRS: sections 7106 and 7114, the chief provisions AFLC identifies as conflicting with AFGE's proposals, were both entrusted by Congress to FLRA's administration. True, the Authority is not a discipline-administering body or review board, but that does not disable it from exercising its customary role, under 5 U.S.C. § 7106(a), to distinguish between employment conditions that are negotiable and those that are not.

Federal labor relations do not occur in a vacuum. FLRA makes its rulings in a wide variety of workplace contexts. Were we to withhold deference as pervasively as the logic of AFLC's argument suggests,

5. The Authority rejected Proposal 2(c) as inconsistent with the employee's choice under 5 U.S.C. § 7121(d), (e) to pursue a claim either on appeal or through grievance procedures. Further, FLRA found Proposal 5 insufficiently specific and therefore dismissed it.

respect for the Authority's adjudications could quickly become an only occasional thing.

## B. Discussion

AFLC contests as irrational the Authority's conclusion that the disputed AFGE proposals would not affect the Command's disciplinary discretion. *Cf. Department of Navy, Naval Underwater Sys. Ctr. v. FLRA*, 854 F.2d 1, 5 (1st Cir.1988) (proposals that "affect" but do not "negate" management rights nonetheless are nonnegotiable under section 7106(A)). AFLC portrays the last chance agreement as an intermediate "disciplinary instrument"— more serious than a warning, but less grave than removal. By sweeping away valuable chips—especially waiver of adverse action appeals—from the last chance bargaining table, AFLC says, AFGE's proposals would sap management's incentive to offer such contracts and limit its options in dealing with problem employees.

In response, the Authority principally distinguishes between the right to discipline—management's sole prerogative— and certain incidents of the decision to defer discipline, *i.e.*, the terms of last chance offers. FLRA maintains that such incidents are negotiable because they do not stop management or impede its unilateral action once a firm decision to impose discipline is made. The Authority then forecasts, additionally and, in our view, unnecessarily, that the disputed proposals would not significantly curtail management resort to last chance offers. While the Authority's reasoning on this pivotal issue sometimes falters, FLRA's main thrust is reasonably discernible and defensible. *See Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974) (courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned").

■ FLRA acknowledges an agency's prerogative to determine unilaterally (1) whether an employee's conduct calls for disciplinary action, and (2) the severity of the sanction. *See, e.g., Department of In-*

*terior, Bureau of Land Management v. FLRA*, 873 F.2d 1505 (D.C.Cir.1989). This court has held, and the Authority's decision in the instant case recognized, that an agency's control over discipline extends well beyond the act of initiating formal proceedings. *See, e.g., National Fed'n Fed. Employees v. FLRA*, 801 F.2d 477, 480 (D.C.Cir.1986). For example, management's right could be compromised when a union attempts to bargain over the scope of an agency's preliminary investigations or over the contents of personnel records. *See id.* ("[T]he right to discipline includes the right to investigate whether disciplinary action is justified."); *Portsmouth Fed. Employees Metal Trades Council & Portsmouth Naval Shipyard*, 34 FLRA 1150, 1157 (1990).

■ It is not self-evident, however, that limiting AFLC's freedom to formulate last chance offers interferes with the prerogatives that the Statute labels "management rights." As already emphasized, the Union's proposals would not disable or even delay AFLC's resort to any of the unilateral disciplinary action that an agency ordinarily has at its disposal.

Furthermore, last chance agreements differ from standard "disciplinary instruments" in key respects. To be effective, a suspension or warning requires neither the acquiescence of the subject employee nor his participation in its formulation. A last-chance offer, by contrast, has no force without the subject employee's acceptance. Moreover, the discretion in hiring, assignment, and discipline, reserved exclusively to management by section 7106(a), is ordinarily exercised subject to employees' right to grieve and to appeal to the MSPB and to the EEOC, the very protections AFLC hopes employees will waive in last chance negotiations. The position that invitations to employees to waive *their* statutory rights are immune from collective bargaining does not seem the inevitably correct interpretation of the FSLMRS. Similarly, because last chance agreements can be consummated only through bargaining with employees, it would be anomalous to regard the agreements as "management

rights" *vis-a-vis* the employees' duly elected representatives.[6]

AFLC further asserts that in addition to their impact on management rights, AFGE's proposals infringe on employees' freedom to designate their own representatives in disciplinary proceedings. *See* 5 U.S.C. §§ 7114(a)(5), 7121(b)(3)(B). By specifying bounds within which last chance agreements can be reached, the Command insists, each of AFGE's proposals[7] is tantamount to mandatory union negotiation, an arrangement that the Authority, in rejecting Proposal 4, held inconsonant with sections 7114(a) and 7121.

■■■ In accord with the FLRA, we do not read those FSLMRS provisions so broadly: the right to a representative other than the union at disciplinary proceedings is neither an entitlement to exclude the union from negotiations nor an open-ended license to negotiate, individually, over "conditions of employment" subject to resolution through collective bargaining. In drawing the line between Proposals 3 and 4, the Authority sought to protect the employee's freedom to refuse Union representation in disciplinary proceedings without compromising the Union's right to bargain over the conditions of employment. We recognize that a union might advance proposals that would so thoroughly dictate or control last chance negotiation as to dishonor rights section 7114 reserves to individual employees. Congress has entrusted that determination—and the balancing it entails—to the Authority, subject to court review for rationality. Exercising that review, we are satisfied that FLRA's disposi-

tive conclusions in this case are reasonable and adequately supported.

■■■ The Authority's responsibility under the FSLMRS, we reiterate, is to decide whether certain union proposals are negotiable. The Authority does so not by assessing the wisdom or desirability of a particular proposal, but by measuring the proposal against the provisions of the statute that Congress charged it to administer. *See generally Department of Defense*, 659 F.2d at 1147, 1157. The role of this court is similarly circumscribed, limited to ensuring that the Authority's particular application of the Statute was "reasonable and defensible." A proposal adjudged to be within the employer's duty to bargain, of course, is merely placed on the negotiating table. The employer remains free to urge upon the union or an impartial arbitrator that the proposal is unsound and therefore should not be adopted or imposed.

### Conclusion

AFLC maintains that by proposing mandatory terms for last-chance agreements, AFGE encroached on the Command's exclusive statutory right to mete out discipline and employees' rights to reject the Union's assistance in disciplinary proceedings. The Authority concluded, reasonably, that AFLC's unilateral disciplinary authority would remain unimpaired by the proposals held negotiable and that those proposals did not trench, impermissibly, on an individual employee's entitlement to designate his or her own representative. Whether the proposals will result in fewer last chance agreements—or the same number—and whether the ensuing state of affairs will be less "free," as AFLC main-

---

6. Because we uphold the Authority's conclusions with regard to AFLC's § 7106(a) challenge, we need not address FLRA's alternate holding that several of the challenged proposals constituted "procedures" bargainable under § 7106(b)(2). Similarly, we express no opinion on whether the proposals might better be classified, per § 7106(b)(3), as "appropriate arrangements," a position the Authority did not take before this court.

7. The Authority maintains that the Command challenged only Proposals 3 and 4 on these

grounds, a reading AFLC disputes vigorously. *See* Reply Brief at 11–12. We need not dwell on the accuracy of FLRA's reading of AFLC's challenges, however, for it is apparent that the Authority "discussed" the full range of the Command's objections. The Authority observed that the § 7114 claims could "reasonably pertain" only to Proposals 3 and 4. FLRA thus implicitly rejected as unreasonable any similar challenge to Proposals 1, 2, and 7, a position we have no cause to question. *See AFGE & AFLC*, 38 FLRA at 313 n. 2.

tains, or less "coercive," as the Union asserts, are not dispositive questions for the Authority or for this court. Because we are satisfied that the Authority's negotiability decision was "reasonable and defensible," we deny the petition for review and grant the Authority's cross-petition for enforcement of its order.

*It is so ordered.*