AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, LOCAL 2094, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 86–1521.

United States Court of Appeals, District of Columbia Circuit.

Argued May 18, 1987.

Decided Dec. 1, 1987.

Judith Galat, Washington, D.C., for petitioner. Mark D. Roth, Washington, D.C., was on brief, for petitioner. Charles A. Hobbie, Washington, D.C., also entered an appearance for petitioner.

Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., William E. Persina, Deputy Sol. and Pamela P. Johnson, Atty., Federal Labor Relations Authority, Washington, D.C., were on brief, for respondent.

Before BORK and STARR, Circuit Judges, and EDWARD D. RE,* Chief Judge.

Opinion for the Court filed by Chief Judge RE.

RE, Chief Judge:

Petitioner, the American Federation of Government Employees, Local 2094, AFL–CIO (Union), seeks review of a final order and decision of the Federal Labor Relations Authority (Authority), which held that the Veterans' Administration Medical Center, New York, New York (Agency), had no duty to bargain over certain union-initiated proposals made during the term of a collective-bargaining agreement. The Authority upheld the Agency's contentions that a proposal to allow a union observer on the Agency's Position Management Committee (PMC), and a proposal to allow employee use of recreational facilities while on an off-duty status were both nonnegotiable.

The questions presented are (1) whether the Authority properly determined, consistent with the guiding purpose of the Federal Service Labor–Management Relations Act (Act), 5 U.S.C. §§ 7101–7135 (1982 & Supp. III 1985), that a proposal allowing for a union observer on the Agency's Position Management Committee was a nonnegotiable item because it directly interfered with the exercise of management rights under 5 U.S.C. § 7106(a); and (2) whether the Authority properly determined, consistent with the guiding purpose of the Act, that a proposal allowing employee use of the Agency's recreational and exercise facilities during lunch and rest periods was also a nonnegotiable item because it did not relate to "conditions of employment" as defined by 5 U.S.C. § 7103(a)(14).

Since we hold that the determinations of the Authority were reasonable and consistent with the policy and purpose reflected in the pertinent statutes, we affirm.

This case arises under Title VII of the Civil Service Reform Act of 1978, commonly referred to as the Federal Service Labor–Management Relations Act. The Act establishes a statutory framework to regulate labor relations between federal agencies and their employees. A key component of the Act is the Federal Labor Relations Authority, an independent agency which performs a role analogous to that of the National Labor Relations Board. *See Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 92–93, 104 S.Ct. 439, 441–42, 78 L.Ed.2d 195 (1983). It is the responsibility of the Authority to carry out the purpose of the Act by providing "leadership in establishing policies and guidance relating to matters under [the Act]." 5 U.S.C. § 7105(a)(1) (1982). Among its other duties, the Authority "resolves issues relating to the duty to bargain in good faith...." 5 U.S.C. § 7105(a)(2)(E).

### THE FACTS

Petitioner, the American Federation of Government Employees, entered into collective-bargaining negotiations with the Veterans Administration Medical Center over proposals covering hospital employees represented by the Union. The Union submitted requests to bargain with the Agency over nine proposals, two of which form the basis of this appeal. The two proposals at issue are as follows:

*Proposal 2*

The Union will be allowed to have one observer on the Position Management Committee. The observer will be designated by the President; the observer will be notified when the Position Management Committee meets.

*Proposal 3*

1. Bargaining Unit employees will have use of the swimming pool when the pool is not being used for patient therapy. The Union will provide a qualified lifeguard to oversee the bargaining unit employees, when using the pool.

2. Bargaining Unit employees will have use of the gym on the 17th Floor. The Recreation Equipment on the 17th Floor will be available for the employees to use. It is understood that the gym and

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation pursuant to Title 28 U.S.C. § 293(a) (1982).

equipment will not be available for use by bargaining unit employees if they are being used by patients.

The Agency refused to bargain, asserting that Proposal 2 interfered with management's rights under 5 U.S.C. §§ 7106, 7103(a)(14). The Union appealed to the Authority, pursuant to 5 U.S.C. § 7117(c), by letter dated June 4, 1984.

As to Proposal 2, the Authority found that allowing a union representative on the Position Management Committee would directly interfere with management's right under section 7106 to "engage in free and open deliberations among themselves." The Agency stated that the Position Management Committee was responsible for reviewing and recommending approval prior to implementation of all changes including work design, occupational distribution, grade distribution, staffing requirements, and costs. Consequently, the Authority determined that, contrary to the Union's view, the PMC was not merely a procedural step followed by the Agency in exercising its reserved rights. Furthermore, the Authority found that to allow Union attendance at these meetings would inhibit management's integral decisionmaking rights. *See National Federation of Federal Employees, Local 1431 and Veterans' Administration Medical Center, East Orange, New Jersey,* 9 F.L.R.A. 998 (1982). Thus, the Authority held Proposal 2 to be nonnegotiable.

As to Proposal 3, the Authority found that allowing the employees to use the recreational facilities did not concern a matter directly related to conditions of employment affecting bargaining unit employees, as defined in section 7103(a)(14) of the Act. *See National Association of Government Employees, Local R5-168 and Department of the Army, Headquarters 5th Infantry Division and Fort Polk, Louisiana,* 19 F.L.R.A. 552 (1985). Hence, the Authority rejected the Union's argument that employee use of recreational facilities during lunch and break periods would enhance efficiency and effectiveness at work. Since the proposal pertained to activities conducted while the employees were not on

an official status, the Authority held that it was outside the duty to negotiate.

Pursuant to 5 U.S.C. § 7123(a), which provides for judicial review of final decisions of the Authority, the Union appeals the adverse determination of the Authority.

### STANDARD OF REVIEW

Section 7123(c) of the Federal Service Labor–Management Relations Act provides that judicial review of an order of the Authority shall be conducted on the record in accordance with section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706 (1982). *See* 5 U.S.C. § 7123(c). The Administrative Procedure Act provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> .     .     .     .     .
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> .     .     .     .     .
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> . . . .

Administrative Procedure Act § 10(e), 5 U.S.C. § 706 (1982).

It is a well established principle of administrative law that due weight should be accorded to an interpretation of a statute by the agency entrusted with its administration. *See, e.g., United States v. City of Fulton,* 475 U.S. 657, 106 S.Ct. 1422, 1428, 89 L.Ed.2d 661 (1986); *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The Authority was established by Congress to develop a specialized expertise in the field of labor relations to be used in interpreting the principles and goals of the Act. *See Bu-*

reau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (BATF). Thus, the reviewing court will set aside the Authority's determination only if it is found to be unreasonable and inconsistent with the statute and its legislative history. *See Chevron U.S.A. Inc.*, 467 U.S. at 843–44, 104 S.Ct. at 2781–82. Nevertheless, the deference due to the Authority's interpretation "cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress." *BATF*, 464 U.S. at 97, 104 S.Ct. at 444 (quoting *American Ship Building Co. v. NLRB*, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965)).

## I. UNION OBSERVER

Pursuant to the Act, federal agencies have a duty to bargain with employees over conditions of employment. *See* 5 U.S.C. §§ 7103(a)(12), (14), 7114(a)(4). Section 7106(a) exempts from this requirement certain enumerated substantive management rights which cannot be lawful subjects of negotiation. The procedures by which these rights may be exercised, however, are expressly declared to be negotiable. 5 U.S.C. § 7106(b)(2). A proposal, although cast in procedural language, which impinges on substantive management decisions is also nonnegotiable "if [its] implementation would 'directly interfere' with the agency's basic right ... [as reserved] under section 7106(a)...." *American Federation of Government Employees, Local 1968 v. FLRA*, 691 F.2d 565, 572 (D.C.Cir.1982) (quoting *Department of Defense v. FLRA*, 659 F.2d 1140, 1159 (D.C.Cir.1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982)); *see also National Treasury Employees Union v. FLRA*, 810 F.2d 1224 (D.C.Cir.1987). Section 7106 provides:

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—

(1) to determine the mission, budget, organization, number of employees, and internal security practices of the agency; and

(2) in accordance with applicable laws—

(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;

(B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;

(C) with respect to filling positions, to make selections for appointments from—

(i) among properly ranked and certified candidates for promotion; or

(ii) any other appropriate source; and

(D) to take whatever actions may be necessary to carry out the agency mission during emergencies.

(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—

(1) at the election of the agency, on the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work;

(2) procedures which management officials of the agency will observe in exercising any authority under this section; or

(3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.

5 U.S.C. § 7106.

The question presented is whether the Authority properly determined that a proposal allowing a union observer on the Agency's Position Management Committee was outside the duty to bargain because the proposal directly interfered with management's deliberative process in reaching decisions and acting on manage-

ment rights under section 7106(a) of the statute.

The Union disputes the Authority's interpretation of Proposal 2 pertaining to a union observer. Its main challenge is to the Authority's holding that the presence of a union observer would "prevent management officials from engaging in free and open deliberations among themselves." *American Federation of Government Employees, Local 2094, AFL–CIO, and Veterans' Administration Medical Center, New York, New York,* 22 F.L.R.A. 710, 713 (1986) (quoting *National Federation of Federal Employees, Local 1431 and Veterans' Administration Medical Center, East Orange, New Jersey,* 9 F.L.R.A. 998, 1002 (1982) (VA Medical Center, East Orange)).

The Union contends that the Authority failed to identify exactly which management rights in section 7106 precluded bargaining over Proposal 2, pointing instead, to an implied right to "engage in free and open deliberations." The Union asserts that only express, protected management rights are immune from the duty to bargain, and that, in their absence, the proposal is negotiable.

█ The Authority has consistently held that "the enumerated management rights 'include more than merely the right to decide to take the final actions specified.'" *National Federation of Federal Employees, Local 615 v. FLRA,* 801 F.2d 477, 480 (D.C.Cir.1986) (quoting *National Federation of Federal Employees, Local 108 and U.S. Department of Agriculture, Farmers Home Administration,* 16 F.L.R.A. 807, 808 (1984)); *see American Federation of Government Employees, AFL–CIO, Mint Council 157 and Department of the Treasury, Bureau of the Mint,* 19 F.L.R.A. 640, 643 (1985); *National Federation Employees, Local 1431 and Veterans' Administration Medical Center, East Orange, New Jersey,* 9 F.L.R.A. 998, 999 (1982). This court has recognized management's right to take certain actions necessary for the exercise of its rights to discuss and deliberate on the various factors on which a determination will be made. *See Nation-*

*al Federation of Federal Employees, Local 615 v. FLRA,* 801 F.2d at 480; *National Federation of Federal Employees, Local 1167 v. FLRA,* 681 F.2d 886, 892 & n. 8 (D.C.Cir.1982). Thus, any claim that management's nonnegotiable rights are confined strictly to those listed or enumerated in section 7106 is without support and contrary to the weight of authority.

█ The Union concedes that certain implied rights may exist, but contends that in determining which implied rights will be recognized, this court must follow the narrow rule set forth in *National Federation of Federal Employees, Local 615 v. FLRA,* 801 F.2d 477 (D.C.Cir.1986). In that case, the court held that management rights under section 7106(a) may include certain implied rights only when the implication of the right is integral to the preservation of one of the enumerated rights. *Id.* at 480. The Union maintains that the presence of a union observer at the Agency's Position Management Committee implicates no substantive management right but, rather, is merely a procedural proposal.

The Authority, however, found the PMC's responsibilities to be nearly identical to those of the committee of the same name on which the union sought representation in *VA Medical Center, East Orange,* 9 F.L.R.A. 998. In that case, the Authority determined that the position management committee was an integral part of the agency's substantive decision-making process, and that union representation would impair the flexibility which Congress intended management officials to have under the Act. *Id.* at 1002; *see Department of Defense v. FLRA,* 659 F.2d at 1159–60. The Authority, therefore, held that the proposal would directly interfere with management's reserved rights under section 7106 of the Act.

The Authority has consistently held that union presence, whether active or passive, would interfere with an agency's right to engage freely in internal discussion and deliberation prior to making decisions to take actions which come within the purview of section 7106(a). *See, e.g., National Federation of Federal Employees, Local 943*

*and Department of the Air Force, Keesler Air Force Base, Mississippi,* 16 F.L.R.A. 313, 315–16 (1984); *National Federation of Federal Employees, Local 1167 and Department of the Air Force, Headquarters, Combat Support Group (TAC), Homestead Air Force Base, Florida,* 6 F.L.R.A. 574, 580 (1981), *aff'd sub nom. Department of Defense v. FLRA,* 685 F.2d 641 (D.C.Cir.1982).

The evidence in this case indicates that the PMC is responsible for reviewing and recommending approval, prior to implementation, of all changes in organization involving work design, occupational distribution, grade distribution, staffing requirements, and costs. The Authority found that management's discussions and deliberations of those activities is an implied right under section 7106, and this court agrees. A union representative in this all-management planning meeting could well inhibit management's decision-making as to its section 7106 rights. The Authority's finding, therefore, is entirely reasonable and consistent with the guiding purpose of the Act.

■ The Union's final argument on this point is that, even though the PMC is an integral part of the process by which management decides and acts pursuant to its rights under the Act, it is only a procedural aspect of these rights. Thus, according to the Union, the Authority must find the proposal negotiable unless "the effect of [its] adoption would be to stop management from 'acting at all.'" *See Department of Defense v. FLRA,* 659 F.2d at 1152; *see also National Federation of Federal Employees, Local 615 v. FLRA,* 801 F.2d 477, 479 (D.C.Cir.1986).

The Authority, however, held that the union proposal was nonnegotiable because its adoption would "directly interfere" with the exercise of the PMC's substantive management rights. *See Department of Defense v. FLRA,* 659 F.2d at 1152; *see also Local 32, AFGE v. FLRA,* 728 F.2d 1526, 1529 (D.C.Cir.1984). The court agrees with the Authority's use of the "direct interference" standard because "the proposal is not merely a procedure to be

followed by the Agency in exercising its reserved rights, but rather would inhibit management in reaching decisions and in acting with respect to those rights." *American Federation of Government Employees, Local 2094, AFL–CIO and Veterans' Administration Medical Center, New York, New York,* 22 F.L.R.A. 710, 713 (1986). Since the Authority's interpretation of Proposal 2, as involving a substantive management right under section 7106, was reasonable and consistent with the legislative purpose, the order of the Authority is affirmed.

## II. RECREATIONAL FACILITIES

The second question before the court is whether the Authority was correct in determining that a proposal relating to employees' use of recreational facilities, while in a nonduty status, was not within the duty to bargain because it did not relate to "conditions of employment" as defined by section 7103(a)(14).

Pursuant to sections 7114(a)(14) and 7103(a)(12) of the Act, an agency has a duty to bargain in good faith over matters directly affecting the conditions of employment of bargaining unit employees. The term "conditions of employment" is defined as "personnel policies, practices, and matters whether established by rule, regulation, or otherwise, affecting working conditions...." 5 U.S.C. § 7103(a)(14).

■ In deciding whether a proposal involves a condition of employment the Authority considers "(1) [w]hether the matter proposed to be bargained pertains to bargaining unit employees; and (2) the nature and extent of the effect of the matter proposed to be bargained on working conditions of those employees." *Antilles Consolidated Education Association and Antilles Consolidated School System,* 22 F.L.R.A. 235, 237 (1986) (emphasis omitted). The record must establish that there is a direct link between the proposal and the work situation or employment relationship of the bargaining unit employees. *See, e.g., International Association of Fire Fighters, AFL–CIO, CLC, Local F–116 and Department of the Air Force, Van-*

*denberg Air Force Base, California,* 7 F.L.R.A. 123 (1981).

In interpreting the statutory definition of "conditions of employment," the Authority has consistently determined that proposals which relate to the involvement of employees in nonwork activities while in a nonduty status, are outside the duty to bargain unless a direct relationship can be established between the proposal and the work situation or employment relationship. *See, e.g., Department of Defense, Department of the Army, Fort Buchanan, San Juan, Puerto Rico and AFGE, Local 2614,* 24 F.L.R.A. 971 (1986); *Department of the Air Force, Eielson Air Force Base, Alaska, and AFGE, Local 1836, AFL–CIO,* 23 F.L.R.A. 605 (1986); *Antilles Consolidated Education Association and Antilles Consolidated School System,* 22 F.L.R.A. 235 (1986).

█ The Union contends that Proposal 3 relates to a condition of employment under the broad interpretation of the term in *Department of Defense v. FLRA,* 685 F.2d 641 (D.C.Cir.1982). In that case, the court affirmed the Authority's determination that union proposals regarding an agency's changes in policy over the rationing of goods at the agency's post exchange, and the registration of motor vehicles were negotiable. The Authority found that ration controls concerned conditions of employment because they were related to the employer's duty to provide essential facilities and services to all civilian employees serving overseas. *Id.* at 647. The Authority also found that motor vehicle registration concerned conditions of employment because an employee's failure to register a motor vehicle could result in sanctions by the employer. *Id.* Those proposals, however, are clearly distinguishable since in the present case no direct relationship can be shown between Proposal 3 and the work situation or employment relationship.

As additional support for its contention that the words "conditions of employment" should be read broadly, the Union cites *American Federation of Government Employees, AFL–CIO and Air Force Logistics Command, Wright–Patterson Air Force Base, Ohio,* 2 F.L.R.A. 604 (1980). In that case, the proposal dealt with the establishment of a day care center for the benefit of the employees. The Authority found the proposal negotiable on the ground that the proposal related directly to the work situation and employment relationship of the employees because the existence of a day care facility had an effect on employee tardiness and absenteeism.

The Union in this case makes a similar argument and contends that employee absenteeism and use of leave is directly related to an employee's ability to exercise, and the maintenance of general good health. In this case, however, the Union has provided no evidence, and the record does not otherwise establish, that access to the facilities in question is directly related to the employee's work situation. The Union maintains that the proposal relates to a condition of employment because its aim is to help employees perform their duties more effectively. In support of its contention, the Union cites reports which maintain that physically active employees perform better and are absent less. That data, however, is not conclusive evidence that employee access to the recreational facilities will have any effect on the working conditions of the employees. Even if some connection were to exist between the activity being considered and the unit employees' work situations or employment relationships, that connection would not establish a duty to bargain on the matter if it is merely remote and speculative. *See National Association of Air Traffic Specialists and Department of Transportation, Federal Aviation Administration,* 6 F.L.R.A. 588, 593 (1981).

The Authority has uniformly found proposals to permit employees to utilize agency recreational facilities during nonduty hours to be nonnegotiable as not relating to personnel policies, practices, or matters affecting working conditions of bargaining unit employees. *See e.g., Antilles Consolidated Education Association and Antilles Consolidated School System,* 22 F.L. R.A. 235 (1986); *National Association of Government Employees, Local R5–168*

*and Department of the Army, Headquarters 5th Infantry Division and Fort Polk, Louisiana,* 19 F.L.R.A. 552 (1985); *American Federation of Government Employees, Local 225 and U.S. Army Armament Research and Development Command, Dover, New Jersey,* 11 F.L.R. A. 630 (1983).

■ Finally, the Union contends that this court should recognize the broad interpretation given the words "conditions of employment" in private sector labor law, which has permitted negotiations over a variety of proposals for employees engaging in nonduty activity during nonduty hours. *See, e.g., Chemtronics, Inc. and Industrial Production Employees, Local 42,* 236 N.L.R.B. 178, 98 L.R.R.M. 1559 (1978); *Donn Products, Inc. & American Metals Corporation and Furniture Workers, Local 450, AFL–CIO,* 229 N.L.R.B. 116, 95 L.R.R.M. 1033 (1977); *Elgin Standard Brick Manufacturing Co.,* 90 N.L.R. B. 1467, 26 L.R.R.M. 1343 (1950).

In support of its contention, the Union cites the recent decision of *National Treasury Employees Union v. FLRA,* 810 F.2d 295 (D.C.Cir.1987) (NTEU). In that case the National Treasury Employees Union appealed a decision by the Authority which held that the Internal Revenue Service had no duty to bargain over union-initiated proposals made during the term of a collective-bargaining agreement. The court applied private sector labor law in setting aside the decision of the Authority on the ground that it was contrary to the purpose of the Act and the intent of the legislature to promote and encourage collective bargaining.

The court, in *NTEU,* quoting *Library of Congress v. FLRA,* 699 F.2d 1280, 1286 (D.C.Cir.1983), stated that "[t]he lack of any prior judicial decisions under the [Act], especially when combined with the relative paucity of applicable legislative history, makes analogies to comparable legal developments in the private sector relevant and useful as a guide for this court's reasoning." *NTEU,* 810 F.2d at 300. The court, however, recognized that the relevance or applicability of private sector labor law to the law of the public sector will vary depending upon the specific issues raised. *Id.* (citing *Library of Congress,* 699 F.2d at 1287). Accordingly, private sector labor law is inapplicable to the present case because of the guidance provided by prior judicial decisions on employee use of recreational facilities. Furthermore, the legislative history of the statute makes clear the meaning of the words "conditions of employment."

This court has recognized the statutory "goal of equalizing the positions of labor and management at the bargaining table." *American Federation of Government Employees v. FLRA,* 750 F.2d 143, 148 (D.C.Cir.1984). It was also the intent of Congress, however, to recognize that the special needs of government required certain protections for management in the collective bargaining process. *See NTEU,* 810 F.2d at 301. In *NTEU,* there was no indication that the Authority's denial of the union's right to bargain was an appropriate means of furthering the statutory goals, because, as the court noted, "the statutory scheme protects governmental needs, not by restricting the circumstances of bargaining, but by limiting the areas that are subject to bargaining." *Id.* By denying the negotiability of the union's midterm proposal, the Authority was not challenging the proposal on the basis of its subject matter, but rather restricting the circumstances of the collective-bargaining process. In this case, the proposal for employee access to recreational facilities must be decided within the statutory scheme limiting the areas subject to bargaining. To apply private sector labor law to the proposal in this case would violate the express congressional intent to preserve certain management prerogatives in the collective-bargaining process through a system of subject matter limitations.

CONCLUSION

In light of the statutory language and the congressional intent to recognize the special needs of government by providing certain protections for management in the collective-bargaining process, the court

holds that the decisions of the Authority are reasonable and effectuate the policy and purpose of the statute. Accordingly, the decisions of the Authority as to Union Proposals 2 and 3 are affirmed.