**DEPARTMENT OF THE TREASURY, BUREAU OF ALCOHOL, TOBACCO AND FIREARMS, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**National Treasury Employees Union, Intervenor.**

**No. 87–1234.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 25, 1988.

Decided Sept. 23, 1988.

Thomas M. Bondy, Attorney, U.S.Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., Richard K. Willard, Asst. Atty. Gen. at the time the opening brief was filed, and William Kanter, Attorney, U.S. Dept. of Justice, Washington, D.C., were on the brief, for petitioner. Joel W. Nomkin, Attorney, U.S. Dept. of Justice, also entered an appearance for petitioner.

William R. Tobey, Attorney, Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., William E. Persina, Deputy Sol., and Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent. Susan Berk, Attorney, Federal Labor Relations Authority, Washington, D.C., also entered an appearance for respondent.

Michele L. Rusen, with whom Lois G. Williams and Gregory O'Duden, Washington, D.C., were on the brief, for intervenor.

Before BUCKLEY and SENTELLE, Circuit Judges, and EDMUND L. PALMIERI,* U.S. Senior District Judge for the Southern District of New York.

Opinion for the court filed by Circuit Judge BUCKLEY.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

BUCKLEY, Circuit Judge:

This case concerns the negotiability of a proposal presented by the National Treasury Employees Union that would require the Bureau of Alcohol, Tobacco and Firearms to rank and consider current employees for promotion before soliciting or considering outside applications. The Federal Labor Relations Authority held that the Bureau must negotiate over the proposal. Because we conclude that the proposal would directly interfere with the Bureau's reserved right to select employees from any appropriate source, we reverse.

## I. BACKGROUND

The Federal Service Labor–Management Relations Act, 5 U.S.C. §§ 7101–7135 (1982) ("Act"), establishes the broad duty of federal employers to negotiate with their employees over "conditions of employment." 5 U.S.C. § 7102(2). Under section 7106, this general duty to bargain does not apply where certain management rights are at stake, including the right "with respect to filling positions, to make selections for appointments from ... (ii) any ... appropriate source." 5 U.S.C. § 7106(a)(2)(C). Under section 7106(b)(2), however, federal employers must nevertheless bargain over "procedures" by which management exercises its reserved rights.

In this case, the National Treasury Employees Union ("union") desired to bargain with the Bureau of Alcohol, Tobacco and Firearms ("BATF" or "agency") over the following proposal:

The parties agree that agency employees should receive first consideration for all actions set forth in section 2A below [i.e., promotions], except in an emergency or in those instances where there is no employee within the region at a grade level lower than the level specified on the vacancy announcement.

First consideration requires that a vacancy be available to agency employees and that they be ranked and considered for selection before any non–ATF applicants are solicited, ranked or considered for selection.

The agency declined to negotiate over the proposal for two reasons. First, the BATF argued that the proposal contravenes the merit system principles set forth in 5 U.S.C. § 2301 and implementing regulations, which provide that selection for government employment should be based solely on job-related criteria. Second, the BATF contended that the proposal would trench upon its statutory right to select employees from any appropriate source.

The Federal Labor Relations Authority ("FLRA" or "Authority") disagreed. In a two-to-one decision, the Authority held that the proposal is consistent with the merit system and, also, that the proposal is procedural (and thus negotiable) because at most, it would merely result in a delay in management's exercise of its right to choose employees. *National Treasury Employees Union*, 26 F.L.R.A. 497, 501 (1987) (*"BATF"*). The FLRA did not discuss the proposal at length but simply referred to what it described as its "virtually identical" decision in *National Treasury Employees Union*, 24 F.L.R.A. 494 (1986) (*"NTEU"*), enforced, *Department of Treasury v. FLRA*, 837 F.2d 1163 (D.C.Cir. 1988). *BATF* at 501. In *NTEU*, 24 F.L.R.A. at 496–99, the FLRA had held that management must negotiate over a proposal providing that management may not consider non-bargaining unit candidates for promotion until ten days after first considering candidates from within the unit.

The BATF appealed. Abandoning its argument that the proposal contravenes the merit system, the agency argues that the FLRA failed to recognize that the union proposal is not merely procedural, but constitutes a substantive limit on management's right to select employees from any appropriate source. We agree.

## II. ANALYSIS

### A. Standard of Review

Section 7123(c) of the Act requires that we review FLRA orders in accordance with section 706 of the Administrative Procedure Act, 5 U.S.C. § 706(2) (1982). Section 706 provides that a reviewing court may set aside an agency action only if it is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at § 706(2)(A).

We recognize that Congress intended that the FLRA, not the courts, should determine whether issues are bargainable under the Act. *National Treasury Employees Union v. FLRA,* 691 F.2d 553, 561 (D.C.Cir.1982). Nevertheless, as the Supreme Court reminds us, we are not judicial rubber stamps, *Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983), and we must set aside an FLRA decision that is not "reasonable and defensible." *Id.*

B. Negotiability Under Section 7106

We have frequently remarked on the difficulty of determining whether a particular proposal is a negotiable procedure under section 7106(b)(2) or a non-negotiable substantive limitation on a right reserved to management under section 7106(a). *E.g., National Fed'n of Fed. Employees, Local 1745 v. FLRA,* 828 F.2d 834, 840 (D.C.Cir. 1987) ("the substance-procedure distinction is one ofttimes fraught with difficulty"); *American Fed'n of Gov't Employees, Local 1968 v. FLRA,* 691 F.2d 565, 572 (D.C. Cir.1982) (warning of "propositions cloaked in procedural garb which encroach upon management's substantive authority"), *cert. denied,* 461 U.S. 926, 103 S.Ct. 2085, 77 L.Ed.2d 297 (1983); *Department of Defense v. FLRA,* 659 F.2d 1140, 1151 (D.C. Cir.1981) ("the distinction between procedure and substance is not always crisp"), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

In *Department of Defense, id.* at 1151–66, we outlined the method by which the FLRA should determine the negotiability of contested proposals. On the one hand, we noted that some proposals are purely procedural. As they do not specify the criteria pursuant to which substantive decisions are to be made, they are negotiable unless their effect is to prevent management from "acting at all." *Id.* at 1152–53. On the other hand, we observed that some proposals "stand close to the uncertain border between procedure and substance," *id.* at 1159, and should not be considered negotiable procedures if they would "directly interfere" with management's exercise of a reserved right. *Id.*

In its deliberations, the FLRA did not consider whether the union's proposal would "directly interfere" with management's right to select employees from any appropriate source but, instead, determined that the proposal is negotiable as a purely procedural limitation that would not prevent the agency from "acting at all." 26 F.L.R.A. at 501 (referring to *NTEU,* 24 F.L.R.A. at 498, where the FLRA applied the "acting-at-all" standard). While conceding that the requirement that management rank and consider agency employees before even soliciting outside applications would delay the exercise of management's right to select employees from any source, 26 F.L.R.A. at 501, the FLRA concluded that any such delay would not constitute a substantive limitation on that right.

The "acting-at-all"/"directly interfere" tests, however, do not exist in a theoretical vacuum. The guidance provided in *Department of Defense* must be assessed not only in terms of the specific requirements a particular proposal would impose on management in the exercise of its protected rights, but on the circumstances which in real life allow it to exercise them. When a proposal stipulates procedures that so affect the environment within which an agency is allowed to act that it places the equivalent of a substantive restraint on its ability to act, that proposal has forfeited its claim to procedural purity.

It was this that caused us to find one of the proposals at issue in *American Fed'n of Gov't Employees, Local 2094 v. FLRA,* 833 F.2d 1037 (D.C.Cir.1987) ("*Local 2094*") to be non-negotiable. That proposal did not even suggest the criteria pursuant to which management decisions might be made. The FLRA in that case nonetheless concluded, and we agreed, that the *practical* consequences of the union proposal would have been such as to interfere with management's ability to exercise its statutorily guaranteed prerogatives.

Specifically, in *Local 2094*, we examined the negotiability of a proposal that would have permitted a union observer to attend meetings of a key management committee. The proposal would not impose any criterion on committee decisionmaking; nor would it, on its specific terms, prevent the committee from conducting its normal business. We found, however, that the proposal was non-negotiable under the "directly interfere" standard because the mere presence of a union observer would interfere "with the exercise of the [management committee's] substantive management rights ... [by] 'inhibit[ing] management in reaching decisions and in acting with respect to those rights.'" *Id.* at 1043 (citation omitted). In so doing, we in effect determined that the *Department of Defense* requirement of the imposition of substantive criteria as a precondition for the application of the "directly interfere" standard is satisfied by an alternative finding that a proposal would inhibit management's ability to exercise its substantive rights.

The FLRA argues, in this case, that it correctly classified the proposal as purely procedural because the proposal leaves the ultimate hiring decision to management and does not outline particular criteria by which management must evaluate applicants. We think the FLRA misjudged the impact of the union proposal and, as a result, mistakenly classified it as a procedural proposal subject to the "acting-at-all" standard. To be sure, we have persistently held that proposals do not forfeit their procedural status simply by delaying the exercise of a management right. *E.g., Department of Defense*, 659 F.2d at 1153 ("The mere possibility of delay would not take a proposal outside the statutory obligation to negotiate."). But the practical implications of the proposal at issue in this case go beyond mere delay.

In *Department of Defense*, for example, we applied the "acting-at-all" standard to a proposal under which no employee could be suspended or removed from his job until completion of the review procedures provided for by the collective bargaining agreement. 659 F.2d at 1152–53. The proposal merely delayed management's exercise of its right to fire employees because it related "only to *when* the suspension or removal may be effectuated, not to *whether*" the firing would take place. *Id.* at 1153 (first emphasis original; second emphasis added). The effect of the proposal was to delay the entire process by which management was to decide whether to discharge a particular employee.

In contrast, the effect of the proposal at issue in this case is to delay only *part* of the employment process; and it is this asymmetrical impact that would directly interfere with management's ability to exercise the substantive rights guaranteed it by Congress. By delaying only one part of the hiring process, the proposal inhibits management's ability to look beyond the agency for potential employees, and it would be naive to believe it had any other purpose.

The practical consequence of the proposal is clear: management may not consider or even solicit applications from outside the agency until it has finished ranking and considering eligible agency applications. As a result, the agency will make its initial employment decisions before it is permitted to inform itself of the qualifications of the full range of potential candidates for the position it seeks to fill. Thus the effect of the proposal is to narrow the universe of candidates that section 7106(a)(2)(C) is intended to guarantee management the right to consider.

While it is true that the proposal does not prevent management from ultimately considering candidates from beyond the agency (just as the *Local 2094* proposal did not "prevent" committee action), it would create pressure on even the most careful managers to promote a reasonably competent agency employee rather than leave a position unfilled during the time it would take to initiate and complete a late-starting search for a more qualified outside candidate. This result is inconsistent not only with section 7106(a)(2)(C), but also with the Act's larger goal of promoting "an effective and efficient Government." 5 U.S.C. § 7101(b). *See Defense Language Inst. v. FLRA*, 767 F.2d 1398, 1401 (9th Cir.1985), *cert. dismissed*, 476 U.S. 1110, 106 S.Ct. 2004, 90 L.Ed.2d 647 (1986).

Finally, we note that our decision is fully consistent with our earlier consideration of *NTEU*, the case on which the FLRA based its decision. In *Department of Treasury v. FLRA*, 837 F.2d 1163 (D.C.Cir.1988), we upheld the FLRA's determination that the union proposal giving bargaining unit applicants a ten-day head start in the hiring process did not contravene merit system principles. The litigants, however, did not ask us to address what we then described as the "more difficult question" of whether the ten-day delay would impair management's right to select employees from any appropriate source. 837 F.2d at 1171 n. 12. Furthermore, the proposal in *NTEU* was significantly different from the one currently at issue because it did not prevent management from soliciting outside applications during the ten-day waiting period.

### III. CONCLUSION

The FLRA unreasonably concluded that the union's proposal was a purely procedural proposal subject to mandatory negotiation. If enacted, the proposal would constitute a direct and substantive impediment to management's exercise of its statutory right to select employees from any appropriate source. The BATF's petition for review is therefore

GRANTED.