AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 2761, AFL–CIO, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 2614, AFL–CIO, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

Nos. 87–1099, 87–1111.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 18, 1988.

Decided Jan. 31, 1989.

Motion for Clarification Granted and Opinion Amended March 28, 1989.

Motion for Stay of Mandate Denied March 28, 1989.

Judith D. Galat, with whom Mark D. Roth, Washington, D.C., was on the brief, for petitioners.

Charles A. Hobbie, Washington, D.C., entered an appearance for petitioners.

Denise Morelli, Attorney, Federal Labor Relations Authority, with whom William E. Persina, Acting Sol., and Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Ruth E. Peters and Elsa D. Newman, Federal Labor Relations Authority, Washington, D.C., entered appearances for respondent.

Before ROBINSON, EDWARDS and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

Opinion concurring in part and dissenting in part filed by Circuit Judge WILLIAMS.

HARRY T. EDWARDS, Circuit Judge:

Locals 2761 and 2614 of the American Federation of Government Employees, AFL–CIO ("AFGE" or "Union") petition for review of two separate decisions of the Federal Labor Relations Authority ("FLRA" or "Authority") finding that the Government did not have a duty to bargain over (1) patronage privileges for civilian employees at the post exchange at Fort Buchanan, Puerto Rico, or (2) an annual picnic at the U.S. Army Adjutant General Publication Center at St. Louis, Missouri. Because we find that the FLRA's decisions in both cases were not supported by substantial evidence and were inconsistent with FLRA precedent, we grant the petitions for review.

## I. BACKGROUND

### A. *Statutory Background*

Under the Federal Service Labor–Management Relations Statute, federal government employees have the right "to engage in collective bargaining with respect to conditions of employment." 5 U.S.C. § 7102(2) (1982). "Conditions of employment" is defined, in pertinent part, as "personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions." *Id.* § 7103(a)(14). Failure to negotiate as

required by the statute is an unfair labor practice. *See id.* § 7116(a)(5).

The FLRA has applied a two-pronged test to determine whether a practice constitutes a condition of employment over which a Government employer has a duty to bargain. First, the Authority asks if the practice affects bargaining unit employees. Second, the Authority inquires into the extent and nature of the effect of the practice on working conditions. *See Antilles Consol. Educ. Ass'n,* 22 F.L.R.A. 235, 236–37 (1986) (*"Antilles"*); *Overseas Educ. Ass'n v. FLRA,* 858 F.2d 769, 771 (D.C.Cir.1988) (*"OEA"*). The disputes in both of the present cases involve the second prong of the *Antilles* test.

## B. *The Post Exchange*

AFGE Local 2614 is the exclusive representative of civilian employees at Fort Buchanan, Puerto Rico. For eighteen years prior to 1984, post exchange privileges at the U.S. Army base at Fort Buchanan, Puerto Rico, had been available to all base employees. Some civilian employees were promised use of the exchange as an inducement for employment in Puerto Rico. The exchange included a small grocery store; a general store selling toiletries, clothing, small appliances, and other goods; and other business facilities, such as a furniture store, a dry cleaners, an optical shop, a watch repair store, a toy store, and a movie theater. There are several stores and shopping centers near Fort Buchanan in the city of San Juan, but employees felt that prices were lower and the quality of goods higher at the exchange. In particular, employees preferred buying milk and poultry at the exchange, because they believed that products sold in Puerto Rico contained chemicals that deter growth in children.

Under Department of Defense ("DOD") directive 1330.9, civilian employees working in the United States do not have exchange privileges. Previously, this directive applied only to civilian employees in the continental United States. On May 12, 1982, however, DOD amended the directive to include civilian employees in Alaska, Hawaii and Puerto Rico.

The Union asked for negotiations over the directive, and Fort Buchanan agreed to negotiate over the implementation of the regulation but informed the Union that the substance of the decision was nonnegotiable. Exchange privileges for civilian employees at Fort Buchanan eventually were terminated on January 31, 1984. The Fort did not terminate privileges for those employees who had been contractually promised use of the exchange.

The Union filed suit, and the case was referred to an administrative law judge ("ALJ"). Noting the employees' health concerns and the Army's use of exchange privileges as an inducement for employment, the ALJ determined that the privilege of using the exchange, "while not a direct form of compensation, is certainly an adjunct to compensation and directly affects the work situation and employment relationship of bargaining unit employees." *Department of Defense, Dep't of the Army, Fort Buchanan, San Juan, P.R.,* 24 F.L.R.A. 978, 988 (1985) (*"Fort Buchanan"*). The ALJ also emphasized that "bargaining unit employees had been granted exchange privileges since 1966 and such privileges, long enjoyed, had become an established condition of their employment." 24 F.L.R.A. at 989. Thus, the ALJ ruled that the Government had a duty to bargain over changes in the exchange privileges policy.

The Government appealed, and the FLRA reversed. 24 F.L.R.A. 971 (1986). The Authority acknowledged that two recent FLRA cases, *Department of the Air Force, Eielson Air Force Base, Alaska,* 23 F.L.R.A. 605 (1986) (*"Eielson"*), and *Department of the Army, Fort Greely, Alaska,* 23 F.L.R.A. 858 (1986) (*"Fort Greely"*), had found that exchange privileges in Alaska were a condition of employment. *See Fort Buchanan,* 24 F.L.R.A. at 973–74. These decisions were "based on a showing that the employees at the isolated base[s] in Alaska needed the Exchange privileges to maintain adequate living standards in connection with their employment there,

because of the lack of reasonably convenient substitutes and the difficulties and dangers of travel in Alaska in winter months." *Id.* at 974. At Fort Buchanan, by contrast, the Authority found that the employees "lost a convenience," but that there was no showing that exchange privileges were related to their working conditions. *Id.* Therefore, under the *Antilles* test, the Authority held that the privileges were not a condition of employment over which the Government had a duty to bargain. The Union petitioned this court for review.

## C. *The Annual Picnic*

AFGE Local 2761 is the exclusive representative of all employees at the U.S. Army Adjutant General Publication Center at St. Louis, Missouri ("Publication Center" or "Center"). From 1966 until 1984, the Publication Center had held an annual picnic for management and employees. Prior to 1981, most of the picnics were held on weekends and off Center premises, although some were held on the premises and/or during working hours. In 1981, in order to celebrate the Center's thirtieth anniversary, a picnic was held on the premises during working hours, and the employees were released from their duties between 10 a.m. and noon. The practice of holding the picnic during the work-week was continued in 1982 and 1983. Management generally planned the picnic, in consultation with the Union, and used the picnic as an occasion to present monetary awards, letters of appreciation, and safety pins for deserving employees.

As planning for the 1984 picnic began, a dispute arose between management and the Union regarding management's announcement that employees who chose not to participate in the picnic would be required to work the entire day or take annual leave. The Union was in the process of surveying personnel to see if they were still interested in participating on those terms when the Center unilaterally cancelled the picnic.

The Union filed suit, and the case was assigned to an ALJ, who found that the eighteen-year practice of holding the picnic, and the more recent three-year practice of holding it on Government time and premises, had ripened the practice into a condition of employment. *United States Army Adjutant Gen. Publication Center, St. Louis, Mo.,* 24 F.L.R.A. 702, 706–07 (1985) (*"Publication Center"*). The ALJ distinguished other cases in which recreational or social activities were held not to be conditions of employment, observing that here there was a direct link between the picnic and working conditions, because the picnic was *"arranged by management, used by management* to award and recognize worthy employees, and *authorized by management* to be held on duty time." *Id.* at 707 (emphasis in original).

The FLRA reversed, stating simply that there was no direct relationship between the work situation and the employment relationship and that the picnic was essentially a recreational activity. 24 F.L.R.A. 695, 698 (1986). One member of the FLRA dissented, finding that the Center's presence "permeated the event, and the employment relationship between the agency and its employees was undeniably and directly enhanced as a result." *Id.* at 700 (Member Frazier, concurring in part and dissenting in part). The Union petitioned for review.

## II. DISCUSSION

It is well established that the court's role in reviewing the FLRA's negotiability determinations is narrow. *See OEA,* 858 F.2d at 771. This court will only reverse a negotiability finding of the Authority when the finding is not supported by substantial evidence, is inconsistent with the governing statute, represents an unexplained departure from prior agency determinations, or is otherwise arbitrary or capricious or not in accordance with the law. *See Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 97 & n. 7, 104 S.Ct. 439, 444 & n. 7, 78 L.Ed.2d 195 (1983); *AFGE, Local 32 v. FLRA,* 853 F.2d 986, 991 (D.C.Cir. 1988). We find that the instant two cases require reversal.

## A. *Exchange Privileges*

■ The FLRA has found in three previous cases that changes affecting exchange privileges of civilian employees at U.S. Army bases are a condition of employment. *See Eielson*, 23 F.L.R.A. 605; *Fort Greely*, 23 F.L.R.A. 858; *Department of Defense v. FLRA*, 685 F.2d 641, 647 (D.C.Cir.1982) (*"South Korea"*) (upholding an FLRA finding that ration control measures at the post exchange in South Korea affected the working conditions of civilian employees). While these decisions do not demonstrate that the Government always has a duty to bargain over exchange privileges,[1] we find that the Authority's decision in *Fort Buchanan* is inconsistent with its prior rulings; we also find that there is no substantial evidence to support the Authority's determination that exchange privileges at Fort Buchanan are not a condition of employment. Three factors, in particular, lead us to this conclusion.

First, the Army used access to the exchange to induce some employees to work at Fort Buchanan. The ALJ relied on this fact in concluding that exchange privileges were a significant and valued benefit of employment that directly affected the work situation at Fort Buchanan. 24 F.L.R.A. at 988. Inducement is a factor on which the FLRA has previously relied in finding that exchange privileges or other practices are a condition of employment. *See, e.g., Fort Greely*, 23 F.L.R.A. at 864; *Department of the Army, Dugway Proving Ground, Dugway, Utah*, 23 F.L.R.A. 578, 583 (1986) (housing). The Authority dismissed the importance of inducement in this case by noting that exchange privileges were not terminated for employees who had been contractually promised use of the exchange. *See* 24 F.L.R.A. at 975. However, while it is true that exchange privileges were not used directly to induce all employees to work at Fort Buchanan, the fact of explicit inducement in some cases, coupled with the eighteen-year practice of granting privileges to all civilian employees, indicates that these privileges were generally considered to be a condition of employment at the base.

Second, the quality of Puerto Rican milk and produce was of major concern to the employees at Fort Buchanan, and employees raised this issue in explaining the importance of exchange privileges to their employment at the base. Although the ALJ did not purport to decide whether Puerto Rican products did in fact pose a health threat, he did find that there was a general belief that these products posed a risk to children. *See* 24 F.L.R.A. at 984. The Authority questioned whether the health threat was real, but did not dispute that the issue was a matter of considerable concern to the employees at the base. *See* 24 F.L.R.A. at 975. Whether or not the employee's fears were justified scientifically, they were real. Just as the isolation of the Army bases in Alaska made exchange privileges an important condition of employment to the employees in the *Eielson* and *Fort Greely* cases, the employees at Fort Buchanan felt isolated by their inability to obtain food products that they could feed their children without fear, and this isolation was an aspect of their employment relationship. *See also Dugway*, 23 F.L.R.A. at 583 (finding that the employees' isolation and lack of housing had a direct effect on working conditions). This link between exchange privileges and employment at Fort Buchanan bolsters our conclusion that exchange privileges directly affected the working conditions at the base.

---

**1.** In *Antilles*, 22 F.L.R.A. at 238, the Authority found that the Government did not have a duty to bargain over a union proposal to grant exchange privileges to all employees of the Antilles school system. Two factors, however, limit the applicability of *Antilles* to the present case. First, *Antilles* involved a union proposal to grant privileges to employees who did not already enjoy them, whereas in *Fort Buchanan*, the Government unilaterally terminated privileges for employees who had enjoyed them for eighteen years. Second, and perhaps more importantly, in *Antilles*, the union offered absolutely no evidence of any relationship between exchange privileges and the working conditions. In *Fort Buchanan*, by contrast, the Union argued that health concerns and the Government's use of privileges as an inducement to employment establish such a link.

Third, the civilians at Fort Buchanan consistently received exchange privileges over a period of eighteen years. The Authority dismissed this fact as irrelevant, stating that "[i]n our view, matters which are not conditions of employment within the meaning of section 7103(a)(14) do not become conditions of employment merely by the effect of a past practice." 24 F.L.R.A. at 975. FLRA precedent, however, is not so clear. In some cases, the FLRA has found that a practice consistently followed over a period of time ripens into a condition of employment. *See, e.g., Social Security Admin., Mid–America Serv. Center, Kansas City, Mo.*, 9 F.L.R.A. 229, 240 (1982) *("Mid–America"), cited in Department of Hous. and Urban Dev., Columbia Area Office*, 17 F.L.R.A. 461, 466–67 (1985); *Department of the Navy, Naval Underwater Sys. Center, Newport Naval Base*, 3 F.L.R.A. 413, 414 (1980) *("Newport Naval Base")*. In other cases, the Authority has stated that past practice does not turn a matter into a condition of employment. *See, e.g., Department of the Treasury, Internal Revenue Service (Washington, D.C.)*, 27 F.L.R.A. 322, 324 (1987) *("IRS")*; *Veterans Admin.*, 24 F.L.R.A. 64, 69 (1986). While these decisions may on their face appear to be contradictory, they can be harmonized.

If a matter is unquestionably within or outside of the duty to bargain—because, for example, the effect on working conditions is clear and direct, or, conversely, because the matter does not affect bargaining unit employees or is within management's exclusive authority—the existence or lack of past practice is irrelevant to the question whether a matter is a condition of employment. *See, e.g., IRS*, 27 F.L.R.A. at 324–25 (lunchroom conveniences found to be a condition of employment regardless of past practice); *Veterans Admin.*, 24 F.L.R.A. at 69 (rotation system for the filling of a supervisory position not a condition of employment despite established practice). In close cases, however, past practice can be determinative. *See, e.g., Newport Naval Base*, 3 F.L.R.A. at 414 (union president's use of official time for representational purposes found to be a condition of employ-

ment where the agency had consistently allowed the practice over an extended period of time); *Mid–America*, 9 F.L.R.A. at 240 (government could not unilaterally change established practice regarding retirement receptions, employee activities during breaks, and administrative time for luncheon preparation and cleanup).

The present case falls within this gray area. As noted above, changes affecting post exchanges have been found to be conditions of employment in three prior cases. *See Eielson*, 23 F.L.R.A. at 609–10; *Fort Greely*, 23 F.L.R.A. at 863–64; *South Korea*, 685 F.2d at 647. In one case, however, the Authority found no duty to bargain over a union proposal to grant access to the post exchange. *See Antilles*, 22 F.L.R.A. at 238. Since exchange privileges are neither clearly within nor clearly outside of the duty to bargain, we find that the Army's eighteen-year practice of granting exchange privileges to civilian employees at Fort Buchanan, in conjunction with the other factors discussed above, tips the balance in this case and leads us to the conclusion that exchange privileges at the Fort have ripened into a condition of employment.

Accordingly, we hold that past FLRA precedent, the Army's use of exchange privileges as an inducement to employment, health and safety concerns, and long-standing past practice all indicate that exchange privileges at Fort Buchanan are a condition of employment. While any one of these factors alone might not be determinative, taken together they support our conclusion that the FLRA's ruling that Fort Buchanan does not have a duty to bargain over employee access to the post exchange was arbitrary and capricious.

### B. *The Annual Picnic*

■ The Union appeals the FLRA's finding that the annual picnic at the Publication Center was not a condition of employment. We agree with the Union and reverse the Authority, because we find that the annual picnic indisputedly affected the employees' work at the Publication Center. *See, e.g., IRS*, 27 F.L.R.A. 322 (lunch room conveniences found to be a condition of employ-

ment); *Veterans Admin. Hosp., San Antonio, Tex.,* 12 F.L.R.A. 76, 85–88 (1983) (meal and rest periods found to be conditions of employment). In fact, the dispute that led to cancellation of the picnic arose precisely because the Center insisted that employees who did not attend the picnic must work their regular shifts, clearly indicating that the Center viewed the picnic as a work-related activity. The picnic was to occur on employer premises, involved an adjustment in the hours that the employees were to spend working at their jobs, was paid for by the employer, and was used by management as an opportunity to present employee awards and otherwise foster a productive work relationship between employees and management. The Center itself thus created an explicit nexus between the picnic and employment at the Center. Under FLRA precedent and the *Antilles* test, a practice that has such a direct effect on the work relationship is clearly a condition of employment. Accordingly, we find that the Authority's determination that the Government did not have a duty to bargain over cancellation of the annual picnic was arbitrary and capricious.

### III. CONCLUSION

For the reasons stated above, the petitions for review are granted and these cases are remanded to the FLRA for further action, as may be required, consistent with this opinion.

SO ORDERED.

WILLIAMS, Circuit Judge, concurring in part and dissenting in part:

I agree with the court that the employees' annual picnic at the Adjutant General's Publication Center in St. Louis was a "condition[ ] of employment" and therefore a subject of bargaining under 5 U.S.C. § 7102(2) (1982). As the court observes, the issue in dispute was whether employees who skipped the picnic would be required to work while it occurred; it thus went essentially to hours of employment and what workers would actually do on the job.

The access of Fort Buchanan, Puerto Rico, civilian employees to PX privileges is a different matter. First, I see a modest problem in this court's recent decision in

*Department of Defense Dependents Schools v. FLRA,* 863 F.2d 988 (D.C.Cir. 1988), *suggestion for rehearing en banc pending,* holding that neither wages nor "fringe benefits" are "conditions of employment" under the statute. Access to a PX, with its discount prices, looks very much like a fringe benefit. Nonetheless, I think the decision in *Dependents Schools* leaves the Authority free to find the PX privileges to be a condition of employment. As the PX was located on the base itself, with free and convenient parking, the Authority could classify PX access as among "the day-to-day circumstances under which an employee performs his or her job." *Id.* at 990.

But to say the Authority was free to find the privileges a condition of employment is quite different from saying it was bound to do so. The facts are ambiguous, and under its precedents the Authority was, in my view, free to regard the privileges as peripheral to working conditions. In *AFGE, Local 2094 v. FLRA,* 833 F.2d 1037 (D.C. Cir.1987), we upheld the Authority's refusal to treat proposals for access to base recreational facilities in off-duty hours as bargainable, accepting its view that such benefits were not "directly related" to the employees' work and noting it had consistently so found. *Id.* at 1044. The PX privileges at stake here, though doubtless different, do not seem to me so much more "directly" related to employees' work as to require the Authority to give a different answer.

The court identifies three features that "lead ... to th[e] conclusion" that the union proposal for continued access to the PX was bargainable. First, it notes that the Army used PX privileges to induce employees to work at Fort Buchanan. But it is equally true that it preserved the privileges for all who were so lured. Maj. Op. at 1447. Perhaps one may infer from the Army's action that "these privileges were generally considered to be a condition of employment at the base," *id.,* but the inference is hardly compelling. An alternative view might be that, as a *general* matter, the privileges were not a material inducement. In both *Department of the Army,*

*Fort Greely, Alaska,* 23 F.L.R.A. 858, 864 (1986), and *Department of the Army, Dugway Proving Ground, Dugway, Utah,* 23 F.L.R.A. 578, 583 (1986), where the Authority had relied on the Army's use of an amenity for recruitment purposes in finding it bargainable, there was no suggestion that the recruitment uses were confined to a discrete group of persons whose interests could be (and had been) protected.

Second, some employees believed that the quality of milk, eggs and poultry available at conventional island markets jeopardized their children's health. Maj. Op. at 1447. But the union offered no evidence to support these fears; they may be groundless. That the employees' *fears* were real, *id.,* does not necessarily equate them with the isolation experienced at remote Army bases in Alaska, a factor that has persuaded the Authority to find PX privileges bargainable in other cases. See, e.g., *Department of the Air Force, Eielson Air Force Base, Alaska,* 23 F.L.R.A. 605, 606 (1986) (PX privileges available only to employees more than 13 miles from Fairbanks over roads that were "difficult and especially dangerous for travel in winter months"); *Fort Greely,* 23 F.L.R.A. at 859 ("geographically isolated location"). Moreover, it seems particularly inappropriate for judges to force their evaluation on the Authority in a context where there is at least a serious risk that the driving force may be cultural parochialism.

Finally, the court notes the Army's consistent provision of the privileges for 18 years, and argues that the Authority's treatments of established practice can be reconciled by the principle that for cases within a "gray area" the presence or absence of a long-established practice can tip the scales. Maj. Op. at 1447–48. The principle is fine, but hardly proves that practice can take the case so far to one side of the "gray area" as to call for our overruling the Authority. It is in precisely that area, surely, that we should defer to its weighing of the nuances, in exercising its " 'special function of applying the general provisions of the Act to the complexities' of federal labor relations." *Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464

U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (citations omitted).